# COURT OF APPEALS.

## January 9, 1917.

## MATTER OF HARRY E. LEWIS v. CARTER.

(220 N. Y. 8.)

(1.) DISTRICT ATTORNEYS—WHERE THE BOARD OF PAROLE PAROLED A PRISONER CONTRARY TO LAW, IT IS THE DUTY OF THE DISTRICT ATTORNEY OF THE COUNTY IN WHICH THE PRISONER WAS INDICTED AND CONVICTED TO OPPOSE SUCH PAROLE AND HAVE JUDGMENT ENFORCED.

1. It is a part of the prosecution for crime, within the statutory duty of the district attorney, to institute and enforce in the courts any proceeding or means authorized by law for the restoration and enforcement of a judgment of conviction obtained by him. Where the board of parole paroled a prisoner contrary to the provisions of the statute the law imposes upon the district attorney the duty to preserve and defend the integrity and effectiveness of the judgment. He is the proper party to institute a writ of habeas corpus to compel the board to rescind the parole.

(2.) SAME—PRISON LAW, § 211.

2. The prisoner was indicted and convicted for the crime of burglary in the third degree — a crime punishable by imprisonment in a State prison. (Penal Law, § 407.) Sentence upon the conviction was suspended during his good behavior. Later he was indicted and convicted for criminally receiving stolen property, and thereupon sentenced to imprisonment in the State prison for the term of three years. He was sentenced as a person who had before been convicted. (Prison Law [Cons. Laws, ch. 43], § 230; Penal Law, § 2189.) *Held*, that the Legislature intended that a person adjudged guilty of a crime of the designated description was a convicted person for the purpose of section 211 of the Prison Law. The board of parole had not the right to substitute for the sentence imposed by the court a judgment or sentence of its own creation.

(*Matter of Lewis v. Carter*, — App. Div. —, reversed.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered

September 29, 1916, which affirmed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the board of parole for State prisons to reconsider and rescind a parole granted to one John Bassi.

The facts, so far as material, are stated in the opinion.

*Harry E. Lewis, District Attorney, Ralph E. Hemstreet* and *Hersey Egginton*, for appellant. The district attorney of Kings county had charge of the criminal action which resulted in the conviction and sentence of John Bassi, and he is charged by statute and by settled rules of law with the duty of seeing that the judgment obtained is enforced. His duty and interest are such as warrant his application for a peremptory writ of mandamus. (Cons. Laws, ch. 11, § 200, subd. 4; People ex rel. Gardenier v. Supervisors, 134 N. Y. 1; People ex rel. Gardiner v. Olmstead, 25 Misc. Rep. 346; Commericial Bank v. Foltz, 13 App. Div. 603; Cruikshank v. Goodwin, 20 N. Y.| Supp. 757; Steward v. Biddlecum, 2 N. Y. 103; People v. Mason, 9 Wend. 505; Commercial Bank v. Foltz, 13 App. Div. 603; People ex rel. Boltzer v. Daly, 37 Hun, 461; People ex rel. Kay v. Swanstrom, 79 App. Div. 94, 175 N. Y. 514; People ex rel. Pumpyansky v. Keating, 168 N. Y. 390; Baird v. Supervisors, 138 N. Y. 95; Chittenden v. Wurster, 152 N. Y. 345.) A person confined in a State prison, who has been previously found guilty of a felony, either upon his plea or upon a verdict, has " before been convicted of a crime punishable by imprisonment in a State prison " within the meaning of section 211 of the Prison Law, and is not eligible to be paroled, even though sentence was suspended upon such former conviction. (People ex rel. Tompkins v. Riley, 161 App. Div. 883; Code Crim. Pro. § 273; People v. Glen, 173 N. Y. 395; People ex rel. Jerome v. Court of General Sessions, 186 N. Y. 164; People v. Bissert, 71 App. Div. 118, 172 N. Y. 643; People ex rel.

Stabile v. Warden, 139 App. Div. 482, 202 N. Y. 138; People
v. Green, 137 App. Div. 763.)

*Egburt E. Woodbury, Attorney-General (Edward G. Griffin*
of counsel), for respondents. The district attorney has become
*functus officio* as regards the case of the prisoner Bassi. (An-
thony v. County of Jasper, 101 U. S. 693; Coler v. Cleburne,
131 U. S. 162; Territory v. Nelson, 2 Wyo. 346; Comm. v.
Clarke, 8'Ky. 323; Schulte v. Keokuk County, 37 N. W. Rep.
376; City of Pilot Grove v. McCormick, 56 Mo. App. 530;
People ex rel. Steward v. R. R. Comrs., 160 N. Y. 202; Matter
of Thaw, 158 Ap. Div. 571; People v. Kramer, 33 Misc. Rep.
209; People v. Miner, 2 Lans. 397.) The relief prayed for is
actually injunctive. The attorney-general alone may sue for
relief either by mandamus or injunction where the public in-
terest is involved. (County of Albany v. Hooker, 204 N. Y.
1; Matter of Reynolds v. Senate, 202 N. Y. 430; U. R. Assn.
v. Travis, 153 N. Y. Supp. 1148; Long v. Johnson, 70 Misc.
Rep. 308; Warner-Quinlan Co. v. Carlisle, 158 App. Div. 638;
Hutchison v. Skinner, 21 Misc. Rep. 729; People v. Ingersoll,
58 N. Y. 1; People v. Fields, 58 N. Y. 491; Ayres v. Lawrence,
59 N. Y. 191; Schieffelin v. Komfort, 212 N. Y. 520.) Man-
damus is not available to the petitioners on behalf of the public
interest. (People v. Tracey, 1 Den. 617; People v. N. Y. C. &
H. R. R. R. Co., 28 Hun, 543; People v. R., W. & O. R. R. Co.,
103 N. Y. 95; Regina v. Frost, 8 Ad. & El. 22.) Section 1933
of the Code of Civil Procedure does not expressly indicates that
the district attorney may sue on behalf of the People where
his basic jurisdiction is not involved. Its terms should not
be given a forced construction in derogation of the attorney-
general's traditional powers. (People v. Miner, 2 Lans. 396;
4 Reeves' History of English Law, ch. 25, p. 122; 3 Black.
Comm. 27; 3 Foss' Judges of England, 44; Rex v. Marsden, 3
Burr, 1812; Rex v. Wilkes, 4 Burr, 2570; Rex v. Austin, 8

Price, 142; Attorney-General v. Brown, 1 Swanst. 291; Hunt v. Chicago R. Co., 20 Ill. App. 282; Barker v. State, 133 Ind. 214; State v. Fremont, 2 Neb. 313; State v. Gleason, 12 Fla. 282; People v. Attorney-General, 22 Barb. 114; People v. Central Crosstown R. R. Co., 21 Hun, 476; People v. Kramer, 33 Misc. Rep. 213; People v. Tweed, 13 Abb. Pr. [N. S.] 25.)

COLLIN, J.:

The appellant seeks a peremptory writ of mandamus compelling the board of parole of State prisons to reconsider and rescind a parole granted by the board to John Bassi. Thus far he has failed.

In December, 1902, Bassi was indicted for and, upon trial, found guilty by the verdict of the jury, in Kings county, of the crime of burglary in the third degree — a crime punishable by imprisonment in a State prison. (Penal Law, section 407.) Sentence upon the verdict was suspended during his good behavior. In June, 1914, he was indicted and convicted in Kings county for criminally receiving stolen property, and thereupon was sentenced to imprisonment in the State prison for the term of three years. The Penal Law prescribed that an indeterminate sentence, and not a definite sentence (Prison Law [Cons. Laws, ch. 43], section 230), should be given to a convicted person (except when convicted for murder first or second degree), who never before had been convicted of a crime punishable by imprisonment in a State prison. (Penal Law, section 2189.) He, therefore, was sentenced as a person who had before been so convicted. He entered upon the service of the term. In November, 1915, the board of parole, upon his application, paroled him from December 15, 1915. The parole was granted under section 211 of the Prison Law, which was: "Every person confined in a State prison, or reformatory, under sentence for a definite term for a felony, who has never before been convicted of a crime punishable by imprisonment in a

State prison, shall be subject to the jurisdiction of the board of parole for State prisons and may be paroled in the same manner and subject to the same conditions and penalties as prisoners confined under indeterminate sentences. The minimum and maximum terms of the sentences of said prisoners are hereby fixed and determined to be as follows: The definite term for which each person is sentenced shall be the maximum limit of his term and if the definite term for which the person is sentenced is two years or less the minimum limit of his term shall be one year. If the definite term for which the person is sentenced is more than two years, one-half of the definite term of his sentence shall be the minimum limit of his term."

The chief question between the counsel for the different parties, in their briefs and arguments, is, has Lewis, as the district attorney of Kings county, the authority to institute this proceeding? The attorney-general, in behalf of the respondents, asserts that upon the conviction and imposition of the sentence the prosecution and therewith the jurisdiction and authority of the district attorney ceased, and the attorney-general of the State is the only public officer authorized to invoke the aid and processes of the court in relation to the execution of the sentence. We have decided that the district attorney of Kings county is authorized to institute the present proceeding.

At common law as administered in England or the American colonies, the office of attorney-general existed; that of district attorney did not. The attorney-general was, speaking broadly, the chief law officer of the sovereign, charged with the duties of protecting the revenues and property of the sovereign, of securing, through the prosecution of persons accused of criminal offenses, the peace and safety of the people, of securing the lawful occupation of public offices and the lawful exercise of public grants, franchises and corporate and trust powers. The first attorney-general of the State was appointed by the Constitutional Convention of 1777, together with other officers deemed

necessary to establishh the new State government. The first Constitution, that of 1777, did not make direct or express provision for the office. It provided for a council of appointment by whom all officers other than those who, by the Constitution, were directed to be otherwise appointed, should be appointed. In 1796 the Legislature passed an act entitled "An act making provision for the more due and convenient conducting public prosecutions, at the courts of oyer and terminer and gaol delivery, and general sessions of the peace." (Chapter 8.) The act divided the State, except the city and county of New York, into seven districts and enacted that for and in each district a resident proper person of the degree of counsel in the supreme court should be appointed to the office thereby created of assistant attorney-general with the duty to attend criminal courts of the district, " manage and conduct all suits and prosecutions for crimes and offenses cognizable in the said courts," and as to the districts the duty of the attorney-general in such respect, except as especially imposed, should cease.

In 1801, chapter 146 of the laws of that year was adopted. It created the office of district attorney in each of the seven districts, attaching to the office the duties of the office of assistant attorney-general. It continued the duty of the attorney-general " to conduct all public prosecutions, at the courts of oyer and terminer and gaol delivery in the city and county of New York." It contained the provision: " Provided, nevertheless, that it shall be lawful for the person administering the government of this State, or any judge of the supreme court by writing under his hand to require the attorney-general to attend the court of oyer and terminer and gaol delivery to be held in any county, and it shall be the duty of the attorney-general to attend accordingly, and thereupon to conduct at such court all public prosecutions; and the district attorney for such district shall in such matters as appertain to his office, and shall be required of him by the attorney general, aid in conducting the same

\* \* \*." A similar proviso was in the act of 1796, the assistant attorney-general being therein charged as was the district attorney in the act of 1801. (2 Lincoln's Const. Hist. of New York, pp. 526-531; People v. Miner, 2 Lans. 396.) In 1818 a statute was passed repealing the act of 1801 and providing for the apointment of a district attorney in each county, charged with the duties imposed by the act of 1796 upon the assistant attorney-general and by the act of 1801 upon the district attorneys. (Laws of 1818, chapter 283.) The Revised Statutes of 1828 provided a district attorney in each county " to attend the courts of oyer and terminer and jail delivery, and general sessions, to be held from time to time, in the county for which he shall have been appointed; and to conduct all prosecutions for crimes and offenses cognizable in such courts." The language has been transmuted into the following: " It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall been elected or appointed; \* \* \*." (County Law [Cons. Laws, chap. 11], section 200, subd. 4.)

A prosecution for crime, within the meaning of this statutory language, includes accomplishing the imposition of the punishment. All the means provided by the law to bring conviction, sentence and the adjudged punishment to a criminal offender constitute the prosecution for the crime committed by him. It is a part of the prosecution to effect the delivery of the convicted person to the prison authorities, in accordance with the judgment of conviction. In case the sheriff of Kings county had, in the case here, in violation of the staute (Code of Criminal Procedure, section 489) refused or neglected to enter upon the execution of the judgment, by delivering " a copy of the entry of the judgment upon the minutes of the court, together with the body of the defendant, to the keeper of the prison," the district attorney would have been bound, by virtue of the statutory duty " to conduct all prosecutions for crimes "

to invoke the process of the law commanding and compelling performance on the part of the sheriff. The assertion by the sheriff or defendant that the official interest and jurisdiction of the district attorney were consumed and extinguished by the trial, verdict and final judgment would, apparently, be ill-founded and factitious. It seems certain and manifest that a prosecution for a crime includes the induction of the convicted offender into his adjudged punishment.

It was also a part of the prosecution for the crime, within the statutory duty of the district attorney, to institute and enforce in the courts any proceeding or means, authorized by law, for the restoration of the judgment and the subjection of Bassi to it. The board of parole had undertaken to reverse and abrogate, and in practical effect had abrogated and reversed, the judgment of the court for the period of the definite sentence from December 15, 1915. The obtaining of the judgment was a part of the prosecution which the law imposed upon the district attorney of Kings county. The law with equal force and certainty imposed upon the district attorney the duty to preserve and defend, in and against all tribunals and against all attacks, the integrity and effectiveness of the judgment. As against the board of parole, as against the sheriff of Kings county, or the authorities of the State prison to which Bassi was sentenced, asserting by official action that the judgment was unlawful or non-jurisdictional, the law bound the district attorney to use all rightful means to uphold it. In this proceeding has has complied with the law.

Upon the question as to whether or not Bassi, when the definite sentence was imposed, had "been convicted of a crime punishable by imprisonment in a State prison," within the meaning of those words as used in section 211 of the Prison Law, the district attorney and the attorney-general are in accord in asserting that he was so convicted on December 15, 1902, and little need be written. The word "convicted" or

" conviction " is of equivocal meaning. It may mean the adjudication of guilt whether by plea, finding or verdict. It may mean the adjudication and the judgment or sentence. We reviewed the leading cases in People v. Fabian (192 N. Y. 443). There the question was whether an elector had forfeited the right of suffrage. We construed the provision of the Election Law (Cons. Laws, ch. 17, section 175) that " no person who has been convicted of a felony shall have the right to register for or vote at any election unless he shall have been pardoned and restored to the rights of citizenship." We held that a suspended sentence was not a conviction within the meaning of that statute. We laid it down as the general rule that " where disabilities, disqualifications and forfeitures are to follow upon a conviction, in the eye of the law, it is that condition which is evidenced by sentence and judgment." At the same time we were careful to point out that the rule was not invariable. Judge WILLARD BARTLETT, writing for an unanimous court, said: " This use of the term, with varying meanings, even in the same statute, and extending right down to the immediate present, certainly demonstrates that there is no fixed signification which the courts are bound to adopt, and leaves us the utmost freedom of inquiry as to what was intended when the Legislature was empowered to disfranchise convicted citizens." (p. 449.)

A scrutiny of the statutes *in pari materia* with the section of the Prison Law reveals that the Legislature intended that a person adjudged guilty of a crime of the designated description was a convicted person for the purpose of this section. (See Penal Law, sections 2184–2189, 2, 30; Code of Criminal Procedure, section 470b.) It may be argued that by this construction of the section some of its words become superfluous. The statute says that every person " under sentence for a definite term for a felony, who has never before been convicted of a crime punishable by imprisonment in a State prison," (Prison

Law, section 211) is subject to parole. If a definite term imports a second offense, there was no need, it may be said, of excepting first offenders. The answer to that argument is to be found in the history of the statute. To-day it is true that definite sentences (except for murder either in the first or in the second degree) are unlawful for first offenses. But it has not always been true. For a long time indeterminate sentences, even for first offenses, were limited to crimes where the maximum imprisonment was five years. (Laws of 1901, chap. 425.) Not until 1907 were they required for all first offenses other than murder. (Laws of 1907, chap. 737.) With this expansion of indeterminate sentences there has been an accompanying expansion of the privilege of parole in cases of definite sentences. At first, where the sentence was definite, there could be no parole unless the maximum imprisonment was five years. (Laws of 1901, chap. 260; Laws of 1902, chap. 500; Laws of 1909, chap. 240, § 63.) By an amendment of the Prison Law in 1909 (Laws of 1909, chap. 489) that restriction was removed, and section 211 of the statute took on its present form. But the statute is not confined to offenders who shall enter the prison thereafter. It applies also to those who are already there. Many of them must have gone to prison at a time when a definite sentence did not import a second offense. It was, therefore, necessary to distinguish between prisoners sentenced to definite terms who were first offenders and those who were not. All the words of the statute have a meaning and a function.

Moreover, the board of parole had not power to violate the sentence imposed by the court. It was a judgment, a judicial determination, obligatory upon the State and each of its officers until it was reversed or annulled by the judgment of an appellate court, or a judicial determination made in a proceeding attacking it directly. The board of parole had not the right to substitute for it a judgment or sentence of their own creation.

The orders of the Appellate Division and Special Term should be reversed, without costs, and a peremptory writ of mandamus should issue as prayed for in the petition.

CHASE, CUDDEBACK, HOGAN, CARDOZO and POUND, JJ., concur.

Orders reversed, etc.