No. 25,947.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, as Attorney-General, *Plaintiff,* v. JUSTUS N. BAIRD, County Attorney of Wyandotte County, *Defendant.*

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*Ouster of County Attorney—Duty of County Attorney in Prosecution of Criminal Cases.* In the prosecution of a criminal case the duty of the county attorney does not end with the judgment. He must cause to be issued all process necessary to carry into execution the judgment of the court. This falls within his general superintending authority and duty over the prosecution.

2. SAME—*Duty of County Attorney to Sue on Bonds Forfeited in Criminal Cases.* It is the duty of the county attorney to sue on bonds in criminal cases, when liability has accrued thereon.

3. SAME—*Official Duties of County Attorney.* The continued neglect, in many cases, of the county attorney to take any steps to see that the judgments obtained by him in criminal cases are being carried into effect, or to recover on appeal bonds, when liability has accrued thereon, is such willful neglect to perform duty enjoined upon him by law as required his removal from office.

Original proceedings in quo warranto. Opinion filed January 10, 1925. Judgment of ouster.

*Charles B. Griffith,* attorney-general, and *William A. Smith,* assistant attorney-general, for the plaintiff.

*James F. Getty,* of Kansas City, for the defendant.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding to oust Mr. Justus N. Baird from the office of county attorney of Wyandotte county. The petition charged willful neglect of duty in respect to prosecutions for violations of the intoxicating liquor laws. This court appointed a commissioner to take the testimony and to make findings of fact and conclusions of law. The commissioner heard the evidence, concerning which there was but little controversy, and made findings of fact as follows:

"1. That the defendant, Justus N. Baird, is now and ever since the 8th day of January, 1923, has been the duly elected, qualified and acting county attorney of Wyandotte county, Kansas. That said county is one having a population of over 120,000 inhabitants.

"2. That attached to the office of said Justus N. Baird were three deputy county attorneys, styled first deputy, second deputy and criminal investigator,

all appointed by him, and all provided for by law. That in addition thereto the said defendant had attached to his office prior to the 1st day of July, 1924, the period covered by this inquiry, one Harry F. Anderson and one Howard C. Anderson, styled 'prohibition officers.' That said Andersons carried commissions as deputy sheriffs of said county and as deputy marshals of the two city courts of Kansas City. That said Andersons drew no salary under said appointments, but in lieu of salary received for their work one-fourth each of all fees that should be allowed and paid the county attorney's office in liquor prosecutions. This arrangement was made with Justus N. Baird and his first deputy, Harry Hayward. That prior to the term of said Baird the enforcement of the liquor laws in said county had been conducted largely, if not entirely, by an assistant attorney-general in said county, and said Andersons had worked under said assistant attorney-general in liquor cases, being paid from out of the attorney's fees allowed the then assistant attorney-general at that time. They had been engaged as prohibition officers in said county for a number of years.

"3. Cases involving liquor laws were during the term of said Baird almost entirely, if not entirely, attended to by said first deputy, Harry Hayward. It does not appear from the evidence that said Baird ever gave his personal attention to liquor cases or complaints regarding same, or that his attention was ever directed to any actual or claimed neglect or misconduct of his said deputy therein.

"4. That during the term of said Baird and up to the time covered by the complaint, July 1, 1924, there had been 180 convictions or pleas of guilty on liquor charges in said county, and attorney fees were collected in practically all of said cases. That 42 of said cases had been in the district court, 72 in the North Side city court and 66 in the south side city court, and in said cases were collected attorney fees as follows:

| | |
|---|---|
| 42 cases in district court .............................. | $1,975.00 |
| 72 cases in north side city court...................... | 2,325.00 |
| 66 cases in south side city court...................... | 2,284.20 |
| | $6,584.20 |

These fees were drawn from the respective courts by said Harry Hayward, deputy county attorney, and by said Andersons, and then said Hayward sometimes presenting them first to said Baird to be indorsed by him. Said Andersons each received 25 per cent of all said fees. There is no evidence as to how the other 50 per cent of said fees were divided, if at all, among the force in the county attorney's office.

"5. Of the 42 district court cases 27 were disposed of prior to July 1, 1923, and 15 thereafter. Practically all of the city court cases were handled after July 1, 1923. In the district court cases a total of 152 months in jail sentences were imposed and a total of $9,000 in fines assessed, and of the fines so assessed $1,415 were paid. I am unable to state from the evidence the total of time served by those sentenced, for the reason that exhibit 6, the jail record, does not check with exhibit 2, the record of district court cases. Some few served their sentences in full, but most of the defendants were paroled on payment of costs, or fine and costs, either at the time of sentence or after

The State, *ex rel.,* v. Baird.

having served a part thereof. There is no evidence that the county attorney or his office recommended these paroles.

"6. In the 138 cases in the two city courts a total of 254 months in jail sentences were imposed and a total of $24,000 in fines assessed, and none of these fines were collected and only about five of the defendants actually served time on their sentences. All the other defendants appealed their cases to the district court, but at the time of taking appeal, sometimes shortly thereafter, they would pay into the city court the costs, including the attorney's fees. None of the cases were tried on appeal, but, the defendants failing to appear in the district court, the appeals would be dismissed, and the clerk of the district court would remand the case to the city court from which the appeals were taken. Nothing was done in the city courts looking to the putting of these sentences into execution, as the law requires, when these cases were remanded. The clerk of the district court did not always send a separate mandate in each case, but often would send one mandate covering a number of cases, and sometimes such mandate would not be under seal. Such irregularities do not appear to have been called to the attention of the county attorney's office. The conduct of these other officers is not here in question. There is no showing that the defendant, Justus N. Baird, had personal knowledge or actual notice of such irregularities, or of the fact that such sentences were not being put into execution.

"7. There were a number of other charges made in the petition against the defendant, but there was no evidence offered in support of such other charges."

It was the conclusion of the commissioner that the defendant had not knowingly, intentionally or willfully violated any law of the state of Kansas and that he should not be ousted from his office.

The state moved to substitute findings of fact and conclusions of law, which was in effect a motion to modify the sixth finding of fact by striking out the last three sentences therein and substituting the following:

"The above action was taken with reference to all of the cases that were brought against violators of the prohibitory statutes of Kansas in Wyandotte county during 1923 and up to July 1, 1924. A large portion of the work of the county attorney's office consisted of prosecution of violators of the prohibitory statutes of Kansas. This action constituted a general scheme and plan on the part of the county attorney and the attaches of his office to permit violators of the prohibitory law to escape any further punishment than the payment of fees provided by law to the county attorney. This practice was so general that the county attorney is charged with knowledge of it. The county attorney connived and condoned with his deputies and employees to permit the existence and following out of the plan described herein."

And to substitute conclusions of law (among others) that it is the duty of the county attorney's office to take charge of each stage of the proceedings in a criminal case until the sentence imposed upon defendant has been executed by payment of fine imposed and by

commitment to the county jail; that the practice described in the above findings in this case is an unlawful manner of handling the prosecution of violators of the criminal statutes of this state; that the defendant willfully neglected to perform his duty as county attorney when he permitted and allowed the practice described herein to exist in Wyandotte county, Kansas, and that the defendant should be ousted from his office.

The proceeding is before us for final decision.

Since the district courts have power to grant paroles in liquor cases which are brought and convictions obtained in the district courts (R. S. 62-2201, 62-2202), and since the evidence does not disclose that the defendant had anything to do with the paroles granted by the judges of the district court, there can be no criticism of the defendant because such paroles were granted. Hence, this question need not be further considered.

The serious question in this case arises over the cases from the city courts. There is evidence that the judge of one of the city courts questioned the right of a person, convicted of the violation of the liquor law in his court and who had paid the costs, to then appeal his case to the district court, and questioned his own authority to approve an appeal bond under such circumstances, and on December 21, 1923, he wrote the attorney-general as follows:

"In the past sixty or ninety days it has been the practice in the handling of liquor cases in the city courts of Kansas City, Kansas, and particularly the city court, first district, to hear the testimony of the state witness, and of course when the defendant offered no testimony, to find the defendant guilty on the various counts charged in the complaint and warrant, except such counts as are dismissed at the request of the county attorney. I have been permitting the defendant, by and with the consent of his attorney and the county attorney, to pay the costs in the city court, which, as you know, includes $25 attorney's fee on each count upon which the defendant is convicted, and then approve an appeal bond offered by the defendant, appealing from the fine and sentence. It has been a serious question in my mind as to whether this was permissible and my conduct has been criticised by reason thereof. It is my desire to comply with the law strictly in these matters and for this reason I desire your opinion thereon."

The attorney-general replied as follows:

"I have your letter of the 21st of December, desiring to know if you as judge should approve an appeal bond in a case where a defendant has been convicted in your court and has paid the costs assessed against him. I see no reason why a defendant should not appeal even though he has paid the costs assessed against him. The requirements of the appeal must be complied with. Also the appeal must be prosecuted by the defendant in due course. The bond

on appeal should be a sufficient bond and the surety thereon should be good for the amount of the bond beyond any question."

The evidence does not disclose whether defendant was advised of this correspondence. Without passing on the correctness, from a legal viewpoint, of the advice of the attorney-general, the correspondence did inform him of the practice of taking appeals in that class of cases after the payment of costs and he saw no objection to it. So we pass the question of the appeals being taken, with the consent of the county attorney, after the payment of costs which included his fee. When the cases reached the district court, the defendants did not appear for trial and the county attorney moved to dismiss the appeals, which motions were sustained. There can be no criticism of this defendant for that action; it was a proper procedure on his part. (17 C. J. 192.)

After that was done, the activity of the county attorney in these cases ceased; he paid no further attention to them. When the appeals were dismissed the clerk of the district court remanded each case to the city court from which the appeal was taken, as the statute requires (R. S. 61-1005). The clerk of the city court did not deliver to the sheriff a transcript of the entry of conviction and sentence, as the statute requires (R. S. 62-1517). The defendants were not called upon to pay their fines nor to serve their jail sentences. No suits were brought upon their appeal bonds. The result is that in 138 cases in which there were convictions of violations of the liquor law in the city courts, and in which costs, including county attorney's fees aggregating $4,609.20, were paid and in which appeals to the district court were taken and dismissed within the twelve months prior to July 1, 1924, and in which fines aggregating $24,000 were assessed, and jail sentences aggregating 254 months imposed, none of the fines assessed were collected, and not more than five of the defendants served any time in jail. The question presented is: Does the failure of the county attorney to follow these cases up after the appeals were dismissed, and to use reasonable efforts to see that the fines were collected and the jail sentences served, and if that could not be done, to bring proper suits upon the appeal bonds, constitute such willful neglect of duty enjoined upon him by the laws of the state (R. S. 60-1609) as to justify an order of ouster from office? The answer must be in the affirmative.

It is contended by defendant that his duties end when the final judgment of conviction is obtained, and that it is no part of his

duty to see that the judgment is carried out; that by statute it is made the duty of the clerk of the court to issue the commitment and of the sheriff to serve it.

The state contends that it is a part of the general duty of the county attorney, as the prosecuting officer of his county, to give attention to a criminal case after judgment to see that the judgment of the court is carried into effect; that this is as much a part of his duty as obtaining the conviction and sentence; that the effect of the prosecution is largely nullified if the sentences imposed are not carried into effect, and that when this duty is neglected uniformly in a large number of cases and covering a long period of time it shows willful neglect of duty.

In 18 C. J. 1316, the rule is thus stated:

"The duty of prosecuting does not end with judgment. The prosecuting attorney must cause to be issued all process necessary to carry into execution the judgment of the court."

To the same effect is 32 Cyc. 714, 715, and 22 R. C. L. 102.

This is the rule applied to the duties of a district attorney under the federal procedure. In *The Levy Court of Washington v. Ringgold*, 5 Pet. 450, it is held:

"The district attorney is specially charged with the prosecution of all delinquents for crimes and offenses; and these duties do not end with the judgment or order of the court. He is bound to provide the marshal with all necessary process to carry into execution the judgment of the court. This falls within his general superintending authority over the prosecution."

*In Matter of Lewis v. Carter*, 220 N. Y. 8, it is held:

"It is a part of the prosecution for crime, within the statutory duty of the district attorney, to institute and enforce in the courts any proceeding or means authorized by law for the restoration and enforcement of a judgment of conviction obtained by him."

The opinion, after discussing the duty of the attorney-general under the English and Colonial practice and of the district attorney under the state law, says the duties have been incorporated in the statute reading as follows:

"It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed." (p. 14.)

The opinion continues:

"A prosecution for crime, within the meaning of this statutory language, includes accomplishing the imposition of the punishment. All the means provided by the law to bring conviction, sentence and the adjudged punish-

. The State, *ex rel.*, v. Baird.

ment to a criminal offender constitute the prosecution for the crime committed by him. It is a part of the prosecution to effect the delivery of the convicted person to the prison authorities, in accordance with the judgment of conviction. In case the sheriff of Kings county had, in the case here, in violation of the statute (Code of Criminal Procedure, section 489), refused or neglected to enter upon the execution of the judgment, by delivering 'a copy of the entry of the judgment upon the minutes of the court, together with the body of the defendant, to the keeper of the prison,' the district attorney would have been bound, by virtue of the statutory duty 'to conduct all prosecutions for crimes' to invoke the process of the law commanding and compelling performance on the part of the sheriff. The assertion by the sheriff or defendant that the official interest and jurisdiction of the district attorney were consumed and extinguished by the trial, verdict and final judgment would, apparently, be .ill-founded and factitious. It seems certain and manifest that a prosecution for a crime includes the induction of the convicted offender into his adjudged punishment." (p. 15.)

It will be noted that the New York statute construed in the above · case is in effect very much like our statute which reads:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested." (R. S. 19-702.)

This statute was enacted in the early history of our state and generally speaking it has been the practice of county attorneys in this state to take such measures as might be necessary in order to have carried into effect the sentences of courts in criminal cases as well as to prosecute actions upon bonds given in criminal cases, when liability has accrued thereon. Their right or duty to do so appears never to have been heretofore questioned in this court, and we regard it as strange that any county attorney in this state should ever conceive it not to be his duty.

By R. S. 21-2125 it is provided that it shall be the duty of the county attorney to diligently prosecute any and all persons violating any provision of the prohibitory liquor law in their respective counties and to bring suit on all bonds or recognizances forfeited, immediately after the happening of such forfeiture.

And by R. S. 62-1225 it is provided, when a defendant gives an appearance bond and fails to appear, the prosecuting attorney may at any time after the adjournment of court proceed by action against the bail upon the recognizance.

And R. S. 62-1707, pertaining to appeal bonds, provides that upon default of any of the conditions of the appeal bond and the failure

to pay the amount thereof upon demand, a cause of action shall accrue against the bondsmen and the county attorney shall immediately commence suit against them for the collection of the amount claimed to be due.

So it was clearly the duty of the county attorney under the statute to bring suits upon the appeal bonds after the appeals were dismissed, if the defendant could not be apprehended. No effort was made by the defendant to perform that duty.

It is argued on behalf of defendant that the county attorney is not liable for the action of his deputies, but this argument has no place in this case for the reason that there is no showing made that any deputy of defendant was ever assigned the duty of seeing that the sentences of the court were carried into effect and, if that could not be done, to bring suit upon the appeal bonds. These duties are imposed by law upon the county attorney and while he might delegate them to some deputy in his office, for it was not possible for him personally to perform all the duties pertaining to his office, he could not neglect them entirely. To say that he could do so with impunity would destroy the machinery which the statutes establish for the effective prosecution of crime.

It necessarily follows that judgment should be entered for the plaintiff ousting the defendant from the office of county attorney of Wyandotte county. It is so ordered.

JOHNSTON, C. J. (dissenting): I concur in the view that the duty of the county attorney does not end with a judgment, but that he should see that process is issued and steps taken towards the enforcement of the sentences and of liabilities on defaulted bonds. There is no complaint as to the actions brought in the district court, but there was some delay in the taking of the steps necessary to the enforcement of the judgment in the city courts, but in my opinion it was not that kind of neglect which warrants a removal from office. This court has said that in cases of ouster:

"The paramount consideration in scrutinizing the acts of the defendant officer is whether they bear the distinguishing characteristics of genuine good faith, not whether those acts are technically free from error when viewed under rigid and critical scrutiny." (*The State, ex rel., v. Foley,* 107 Kan. 608, 193 Pac. 361, syl. 2.)

In Wyandotte county there is a population of 120,000 and a great amount of civil and criminal business in which the state and the

county are interested and the county attorney is of course unable to give personal attention to all of this business. According to the evidence two deputies are provided to assist the county attorney and two others not attorneys who assist in intoxicating liquor cases and are designated as prohibition officers. The commissioner has found, and apparently upon sufficient evidence, that prior to the defendant assuming the office of county attorney the enforcement of the prohibitory laws in that county had been conducted by an assistant attorney-general, and the two prohibition officers worked under and in connection with the assistant attorney-general. After the defendant took over the duties of county attorney the services of the prohibition officers were continued under the same system. The conduct of intoxicating liquor cases was placed in charge of a deputy county attorney and the defendant, it is found, had not given personal attention to these cases in the city courts nor was his attention ever directed to any actual or claimed neglect or misconduct of the officer to whom this branch of the service was assigned. The report of the commissioner shows that there were some irregularities in the officers as to the remanding of cases where appeals were dismissed, but it was not shown that defendant had personal knowledge of these nor actual notice that the sentences in these cases were not being put into execution. In view of the statutory rule that only willful misconduct or willful neglect of duty justifies an ouster, I have come to the same conclusion as that reached by our commissioner:

"1. That the defendant has not knowingly, intentionally or willfully violated any law of the State of Kansas.

"2. That said defendant should not be ousted from his office as county attorney of Wyandotte county."