In the Matter of WILLIAM POULOS, Petitioner, against G. JOSEPH MINETTI, as Commissioner of Marine and Aviation of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, November 14, 1949.

*John P. McGrath, Corporation Counsel* (*Harry E. O'Donnell* and *Samuel K. Handel* of counsel), for G. Joseph Minetti, as Commissioner of Marine and Aviation of the City of New York, respondent.

*Francis J. Mahoney* for petitioner.

*Emanuel Friedman* for 389 Eighth Avenue Restaurant Corp., respondent.

HECHT, J. Respondent, commissioner of marine and aviation of the city of New York, moves to dismiss the petition herein on the grounds (a) that it fails to state facts sufficient to constitute grounds for the relief sought, and (b) that it is insufficient as a matter of law. On familiar principles, the allegations of the petition are deemed admitted on this motion. These allegations are as follows:

Petitioner is a citizen and a taxpayer and has been engaged in the operation of a lunchroom at 653 West 42nd Street, Manhattan. Defendant commissioner issued a public notice that he would receive sealed bids for the privilege of maintaining a lunch stand on a parcel of land in the marginal street at the foot of West 42d and 43d Streets adjoining the prolongation of the northerly side of the 42nd Street ferry terminal. One of the conditions was "No bid shall be accepted, unless at least one week prior to the date of submitting bids, there shall have been submitted appropriate photographs and floor plans of the building contemplated by the bidder (which) shall have the approval of the Commissioner." Respondent restaurant corporation submitted such a bid which the commissioner accepted despite the fact that such photographs and floor plans had not been submitted by it as required.

Respondent commissioner thereupon made an agreement with respondent restaurant corporation permitting the latter to erect such a lunch stand.

The agreement is contrary to law for the following reasons:

(1) The commissioner has no authority to lease nor to grant a permit of a portion of a marginal street for the erection and maintenance of a lunch stand.

(2) The commissioner did not have and does not now have the approval of the board of estimate for the agreement made by him.

(3) No legal approval can be given by the board of estimate to a lease or permit of a portion of the marginal street for the erection and maintenance of a lunch counter or other similar structure.

(4) Respondent restaurant corporation did not comply with the conditions of the bid in that it failed to submit the requisite photographs and floor plans.

The building being erected pursuant to this allegedly illegal agreement is situated across the street from petitioner's lunchroom, and the erection and maintenance of this competing lunchroom will measureably interfere with petitioner's business and will cause him irreparable injury. Alleging that he has no adequate remedy at law, petitioner seeks an order (a) restraining both respondents from proceeding with or permitting the erection of a lunchstand in the marginal street as contemplated by the agreement between them; (b) annulling the determination of respondent commissioner in accepting the bid from respondent restaurant corporation; and (c) declaring the agreement illegal, null and void.

The petition is not labeled as having been instituted pursuant to article 78 of the Civil Practice Act, and the allegation that petitioner has no adequate remedy at law is inconsistent with the theory of such a proceeding. However, in all other respects, the petition conforms to the requirements of article 78, both parties have treated it as being brought under that article, and I will so consider it.

The grounds urged for dismissal are (a) that the relief sought cannot be obtained in an article 78 proceeding; and (b) that the petition is insufficient as a matter of law to warrant the relief sought. These contentions will be considered in reverse order.

The commissioner urges that he had power to make this agreement under section 707 of the New York City Charter (1938). That section is entitled "Leases of wharf property", and subdivision b thereof provides that "the commissioner may grant temporary permits terminable at will for a period not exceeding one year to use and occupy *any such property* belonging to the city" (italics supplied). But "wharf property" and "marginal streets" are two distinct and separate things.

Subdivision 17 of section 981–1.0 of the Administrative Code defines "wharf property" as "wharves, piers, docks and bulk-

heads and structures thereon and slips and basins, the land beneath any of the foregoing, and all rights, privileges and easements appurtenant thereto and land under water in the port of New York, and such upland or made land adjacent thereto as is vested in the department of docks when this code takes effect or may be assigned to it." It is obvious that this definition does not include a "marginal street" and this division is made clear by the different treatment of the two subjects throughout the charter and the Administrative Code.

Thus, section 243 of the charter provides that serial bonds or corporate stock may be issued and the proceeds thereof expended for (among other things) "the construction and acquisition of docks and wharf property." It has never been thought that this would include the construction and acquisition of marginal streets. Section 704 of the charter provides that "the commissioner shall have exclusive charge and control * * * of the wharf property" (subd. a); and "shall have exclusive charge and control of the building, rebuilding, repairing, altering, maintaining, strengthening and protecting of such wharf property * * * and of all the cleaning, dredging and deepening necessary for and about the same" (subd. b). But section 705 provides that "the president of a borough shall have charge and control: 1. of regulating, grading, curbing, flagging, guttering and draining of marginal streets or places * * *; 2. of paving, repaving, resurfacing and repairing of marginal streets or places". (Cf. also section 704–1.0 with section 704–2.0 of the Administrative Code.)

Since this marginal street is not comprehended within the term "wharf property", we must look to the statutory provisions giving the commissioner authority over "marginal streets" specifically. Subdivision d of section 704 of the charter provides: "The commissioner shall have exclusive power to *regulate* the use of marginal streets so that they may be used to the best advantage *in connection with* wharf property * * * * " (italics supplied). It is obvious that the erection of a lunch stand is not within this power.

Section 704b–1.0 of the Administrative Code provides that "the commissioner *with the approval of the board of estimate* may authorize the lessee of any marginal street to erect and maintain upon the premises so demised sheds, warehouses, coal pockets or other buildings or structures devoted to commercial uses in connection with the adjacent piers and bulkheads." (Italics supplied.) Passing the question as to whether the lunch

stand here involved falls within the type of building enumerated, the petition alleges that the board of estimate never approved the agreement herein. Therefore, the commissioner had no power to make the agreement.

The commissioner's second contention that the relief sought may not be granted in an article 78 proceeding is likewise untenable. ''No right to relief theretofore available by certiorari, by mandamus, or by prohibition, for the review of a determination made by a public body or officer *or for the annulment of an official act not performed in accordance with law* or to 'compel performance of a duty specifically enjoined by law' was destroyed (§§ 1283 and 1284). The primary purpose of the new article was to wipe out technical distinctions which had been a snare for suitors approaching the court for relief and which, at times, hampered the court in granting relief for proven grievances. Under its provisions, when a suitor shows a right to some relief the court grants the relief to which he is entitled, unrestricted by the form of the proceedings brought by the aggrieved person '' (LEHMAN, Ch. J., in *Matter of Newbrand* v. *City of Yonkers,* 285 N. Y. 164, 174. Italics supplied.)

It has consistently been held that the old writ of mandamus could be invoked, not only to require an official to perform his legal duty but also to require him to rescind an illegal act, i.e., he may be ordered to ''undo'' as well as to ''do'' (*Matter of Kornbluth* v. *Rice,* 250 App. Div. 654, 656 [3d dep.]; *Matter of Lewis* v. *Carter,* 220 N. Y. 8, 11–18). In *Southern Leasing Co.* v. *Ludwig* (217 N. Y. 100) the superintendent of buildings refused to revoke a permit for a sign which had become illegal under an ordinance of the board of aldermen, passed after the issuance of the permit, but before construction of the sign had commenced. The court held, per CARDOZO, J., that mandamus rather than a taxpayer's action was the proper remedy. This decision was followed by Mr. Justice SHIENTAG in *A.E.F.'s., Inc.* v. *McKenzie* (184 Misc. 288, 291) where he held that an article 78 proceeding rather than a suit for injunction was the proper remedy to require the commissioner of marine and aviation to annul his revocation of a permit.

Petitioner herein has a right to bring this proceeding. In *Matter of Kornbluth* v. *Rice* (*supra*) the court issued a peremptory mandamus directing the Civil Service Commission to revoke its previous certification of an applicant as eligible for promotion. The proceeding was instituted by another person on the same list who would be eligible to take the examination if the certificate were revoked and an examination for the position

called. Petitioner here has the same competitive interest in preserving his status against the position illegally obtained by the respondent restaurant corporation.

Motion is denied. Settle order.