DOMINGO EMANUELLI FONTÁNEZ, peticionario, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE PONCE, hoy TRIBUNAL SUPERIOR, SALA DE PONCE, demandado; EL PUEBLO DE PUERTO RICO, interventor.   EL PUEBLO DE PUERTO RICO, peticionario *v.* EL MISMO, demandado; DOMINGO EMANUELLI FONTÁNEZ, interventor.

Números 1920 y 1921.

*Sometidos:* 1 de abril de 1952.   *Resueltos:* 13 de abril de 1953.

542

*Luis Blanco Lugo,* abogado del peticionario Emanuelli; *Hon. Procurador General Víctor Gutiérrez Franqui y Omar Cancio Sifre, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 12 de noviembre de 1946 Domingo Emanuelli Fontánez fué sentenciado a una pena indeterminada de 12 a 24 años de presidio por un delito de asesinato en segundo grado cometido el 23 de noviembre de 1945.[1]   En esa misma fecha fué también sentenciado a una pena de 4 meses de cárcel por un delito de portar armas incidental al de asesinato.

El 21 de diciembre de 1950 la Junta de Libertad Bajo Palabra concedió a Emanuelli la libertad condicional, y el 28 del mismo mes y año, cumplidos ya por éste 5 años, 2 meses y 5 días de la sentencia impuéstale por el delito de asesinato (3 años, 1 mes y 11 días de prisión, más 2 años y 24 días de bonificación por buena conducta) ordenó su excarcelación, expidiendo el correspondiente certificado de libertad condicional.[2]

---

[1] Dicha sentencia fué confirmada por este Tribunal el 22 de julio de 1947. *Pueblo* v. *Emanuelli,* 67 D.P.R. 667.

[2] La orden aludida dice así:

"Habiéndose demostrado satisfactoriamente que DOMINGO EMMANUELLI FONTÁNEZ sentenciado por la Corte de Distrito de Ponce, Puerto Rico a cumplir 12 a 24 años de presidio y 4 meses de cárcel convicto de Asesinato en Segundo Grado y Portar Armas y quien se encuentra recluído en la Penitenciaría Insular desde 17 de noviembre de 1947, *reúne los requisitos necesarios para ser elegible para gozar del privilegio de una libertad bajo palabra,* la Junta de Libertad Bajo Palabra, en el ejercicio de la facultad que le concede la Ley núm. 266, aprobada el 3 de abril de 1946, ordena que dicho Domingo Emmanuelli Fontánez sea puesto en libertad bajo palabra hasta la expiración del resto de tiempo que le falta para extinguir su

El 20 de marzo de 1951 acudió El Pueblo de Puerto Rico al Tribunal de Distrito de Puerto Rico, Sección de Ponce, solicitando de dicho tribunal que, en vista de que Emanuelli no se hallaba cumpliendo las sentencias a él impuestas, ordenara su arresto e ingreso en la Penitenciaría Insular para tales fines, fundándose en que la actuación de la Junta de Libertad Bajo Palabra concediéndole el privilegio de libertad condicional "es nula e ineficaz por haber actuado sin jurisdicción y en exceso de las facultades que la ley le concede por razón de que las disposiciones de la Ley de Sentencias Indeterminadas son aplicables a las personas que al tiempo de la vigencia de dicha ley se encontraban confinadas en cualesquiera (sic) institución penal de Puerto Rico, tal como ocurre en el caso en consideración (Ley núm. 295 de 1946, aprobada en 10 de abril de 1946 ((1) pág. 759), tal como fué enmendada por la Ley núm. 176, aprobada en 4 de mayo de 1949 ((1) pág. 553), especialmente el artículo 3ro de esta Ley)", (³) y en no haber cumplido Emanuelli "el término mínimo que la ley exige para que una persona pueda ser considerada elegible a recibir el privilegio de libertad bajo palabra, por ser requisito indispensable y de carácter jurisdiccional [el de] que, previamente, el convicto haya cumplido el mínimo de la sentencia indeterminada impuéstale." (⁴)

En oposición a dicha solicitud, Emanuelli sostuvo (1) que

sentencia, siempre que su conducta, durante el disfrute del privilegio que aquí se le concede, así lo justifique." (Bastardillas nuestras.)

Se hizo constar, además, que Emanuelli permanecería "en libertad bajo palabra hasta el día 23 de febrero de 1970."

(³) El 4 de enero de 1951 el entonces Procurador General de Puerto Rico se dirigió por carta a la Junta, y el 10 del mismo mes sometió memorándum, sosteniendo que por haber sido Emanuelli puesto bajo palabra cuando aún no había cumplido 6 años (una cuarta parte) del término de su sentencia, estaba en orden reconsiderar el acuerdo concediéndole la libertad bajo palabra, cancelar el certificado expedídole, recluirlo en la penitenciaría y esperar a que extinguiera la cuarta parte de su sentencia para volver a considerar su caso y resolver de nuevo sobre su libertad bajo palabra.

(⁴) Sostuvo también El Pueblo en dicha moción que la actuación de la Junta excarcelando a Emanuelli era nula e ineficaz toda vez que a éste le faltaba por cumplir la sentencia de 4 meses de cárcel impuéstale por el delito de portar armas.

el tribunal carecía de jurisdicción para conocer de la moción presentada por El Pueblo de Puerto Rico y que la actuación de la Junta de Libertad Bajo Palabra no era revisable por dicho tribunal, (2) que la actuación de la Junta era válida y eficaz en derecho y cumplía con todos los requisitos exigidos por la legislación en vigor, y (3) que la aplicación de la Ley de Sentencias Indeterminadas a Emanuelli, en tanto afectaba el término dentro del cual la Junta podía considerar su caso, era inconstitucional y nula.(⁵)   De otro lado, la Junta de Libertad Bajo Palabra sostuvo—por los fundamentos que había expuesto en una resolución por ella dictada el primero de marzo de 1951(⁶) al declarar sin lugar la reconsideración que de su orden concediendo la libertad condicional a Emanuelli hiciera el Procurador General—que había actuado, al conceder dicha libertad, con plena jurisdicción y facultad.

El tribunal recurrido resolvió: (1) que tenía jurisdicción para conocer de la moción de El Pueblo de Puerto Rico; (2) que la aplicación a Emanuelli de la Ley núm. 295, aprobada el 10 de abril de 1946, haría el castigo más oneroso en cuanto a su derecho a invocar el privilegio de libertad bajo palabra dentro de un término más corto que el mínimo de la sentencia indeterminada impuéstale siendo, por lo tanto, en su aplicación a Emanuelli, *ex post facto;* (3) que interpretadas conjuntamente las leyes núms. 266 de 4 de abril de 1946 ((1) pág. 551) y la 295 ya mencionada, Emanuelli venía obligado a cumplir la cuarta parte de la sentencia indeterminada que le fuera impuesta antes de ser elegible al beneficio de libertad bajo palabra; (4) que la Junta tenía autoridad para conceder la libertad bajo palabra a Emanuelli en cuanto a la sentencia de cuatro meses de cárcel.   En consecuencia, ordenó el arresto de Emanuelli y su ingreso en la peniten-

---

(⁵) Hemos resumido la posición del peticionario Emanuelli ante el tribunal recurrido en cuanto corresponde a la posición que esencialmente asume ante este Tribunal, tanto en el recurso en el cual él es peticionario como en el recurso en el cual es interventor.

(⁶) A dichos fundamentos habremos de hacer mención en el transcurso de esta opinión.

ciaría hasta que extinguiera la cuarta parte del máximo de la sentencia indeterminada de 12 a 24 años que se le impuso por el delito de asesinato en segundo grado.

Tanto Emanuelli como El Pueblo de Puerto Rico acudieron a este Tribunal en solicitud cada cual de que se expidiera auto de *certiorari* dirigido al tribunal sentenciador a fin de que revisara la resolución por la que se ordenó el ingreso de Emanuelli en la penitenciaría en la forma ya expuesta. Por la importancia de las cuestiones envueltas expedimos los autos de certiorari, que fueron consolidados para trámite y argumentación.

Sostiene Emanuelli en su recurso que el tribunal sentenciador erró al sostener que tenía jurisdicción y facultad para revisar las actuaciones de la Junta de Libertad Bajo Palabra, y, (2) al resolver que tenía que cumplir la cuarta parte de la sentencia impuéstale por el delito de asesinato antes de que la Junta pudiera considerar su caso. Por su parte, El Pueblo sostiene que fué error del tribunal a quo resolver que la Ley 295, aprobada el 10 de abril de 1946, en su aplicación a Emanuelli, era *ex post facto*.

I

*La Cuestión de Jurisdicción.*

▉▉▉ La posición que asume Emanuelli al argumentar el error de falta de jurisdicción puede resumirse así: La moción de El Pueblo para que se ordene su arresto y encarcelación envuelve la revisión de un acuerdo de la Junta de Libertad Bajo Palabra. La ley creadora de la Junta no dispone expresamente que sus acuerdos y resoluciones puedan ser revisados judicialmente. Aparentemente la razón para ello es que la Junta *ejercita el poder de clemencia ejecutiva* reconocido como excepción al principio de separación de poderes. La ausencia, en la ley, de disposiciones sobre revisión judicial de las actuaciones de la Junta, excluye tal revisión, excepto cuando se trata de investigar (1) la capacidad legal del funcionario ejecutivo para conceder *el perdón* y (2) la

validez de *un perdón* obtenido mediante representaciones fraudulentas. Ninguna de estas excepciones está aquí envuelta. Además, el tribunal sentenciador está impedido de ordenar su reclusión en el uso de su facultad para hacer cumplir sus sentencias por la razón de que él, Emanuelli, al disfrutar de su libertad bajo palabra está cumpliendo su sentencia, faltando así el requisito esencial para que pueda invocarse tal facultad: el incumplimiento de la sentencia.

No tiene razón Emanuelli. Si bien es cierto que un convicto, a quien se le concede la libertad bajo palabra, está cumpliendo su sentencia mientras disfruta de su libertad, *United States ex rel. Rowe* v. *Nicholson*, 78 F.2d 468 (C.A. Va. 1935), cert. denegado en 80 L. ed. 405; *United States ex rel. Nicholson* v. *Dillard*, 102 F.2d 94 (C.A. Va. 1939); *United States ex rel. Gutterson* v. *Thompson*, 47 F.Supp. 150 (D. C. N.Y. 1942), confirmado en 135 F.2d 626, cert. denegado en 320 U.S. 755, 88 L. ed. 450; *Anderson* v. *Williams*, 279 Fed. 822 (C.A. Kan. 1922), revocado por otros fundamentos en 263 U.S. 193, 68 L. ed. 247, también es cierto que para concederla, la Junta no puede actuar fuera de los poderes estatutarios conferídosle, o en violación de un mandato expreso de la ley, *Lewis* v. *Carter*, 220 N.Y. 8, 115 N.E. 19 (C.A. N.Y. 1917), y si eso hace, su actuación es nula e inexistente en derecho y no confiere *status* legal para el disfrute válido de la libertad bajo palabra, siendo la situación legal de la persona a quien se le ha concedido dicha libertad, similar a la de aquélla que se ha escapado de la prisión, (⁷) *People ex rel. Miller* v. *Nierstheimer*, 85 N.E.2d 10 (Ill. 1949). Véase también *De Jesús* v. *Ramírez, Alcaide Cárcel*, 72 D.P.R. 297. Cf. *Taylor* v. *Squirer*, 142 F.2d 737 (C.A. Wash. 1944), cert. denegado en 323 U.S. 755, 89 L. ed. 604; *United States ex rel. Nicholson* v. *Dillard*, supra, y 141 A.L.R. 1225.

---

(⁷) En este caso, luego de dictada por el tribunal recurrido orden para la encarcelación de Emanuelli, se fijó fianza por este Tribunal para suspender dicha orden.

548

■■ Cuando la Junta concede, *en el ejercicio válido* de sus facultades de ley, la libertad bajo palabra, no ejercita el poder de clemencia ejecutiva que está reservado al Gobernador.([8]) Este poder del Gobernador ni es igual a, ni se menoscaba con, el ejercicio del poder para conceder la libertad bajo palabra. El primero dimana de la ley fundamental del Estado y es exclusivo; es un mero acto de clemencia que no puede ser reglamentado ni intervenido por la rama legislativa. El segundo dimana del poder legislativo y es generalmente delegado a una junta administrativa para que lo ejercite en su discreción, dentro de las normas que el poder legislativo establezca. El indulto borra para siempre la convicción del delito cometido, quedando de ahí en adelante el indultado tan limpio de ella como si nunca hubiera sido convicto. La libertad bajo palabra no borra la convicción, y es algo más que un acto de gracia: es primordialmente una medida penológica para fomentar la disciplina y la reforma de los penados. *Com. ex rel. Banks* v. *Cain*, 28 A.2d 897, 143 A.L.R. 1473, (Pa. 1942); *In re Court of Pardons*, 129 Atl. 624 (1925 N.J.). Véase también 65 Harv. L. Rev. 309.

■ La ausencia en la ley de disposiciones sobre revisión judicial de las actuaciones de la Junta de Libertad Bajo Palabra no juega papel alguno en el caso de autos en el cual no se intenta revisar la discreción que en el ejercicio válido de la autoridad conferídale por la ley haya podido ejercer la Junta, sino impugnar su autoridad para tomar acción alguna en el caso, por no tenerla en ley. Tal ausencia de disposicio-

---

([8]) El artículo 12 de la antigua Ley Orgánica de Puerto Rico, al enumerar los poderes del Gobernador, disponía entre otros que "Podrá conceder indultos y suspender la ejecución de sentencias, condonar multas y confiscaciones por delitos cometidos contra las leyes de Puerto Rico..."

La Sección 4 del Artículo IV de la Constitución del Estado Libre Asociado de Puerto Rico provee en lo pertinente que:

"Los deberes, funciones y atribuciones del Gobernador serán:

".    .    .    .    .    .    .

"Suspender la ejecución de sentencias en casos criminales, conceder indultos, conmutar penas y condonar total o parcialmente multas y confiscaciones por delitos cometidos en violación de las leyes de Puerto Rico."

nes sobre revisión judicial, no tiene, pues, significación alguna, ya que siendo la libertad bajo palabra una gracia legislativa y no un derecho que pueda ser susceptible de reclamarse judicialmente, *Hiatt* v. *Compagna*, 178 F.2d 42 (C.A. Ga. 1949), en su concesión o negación no está envuelta cuestión alguna relativa al debido proceso de ley. No es, por lo tanto, extraño que, contrário a lo que ocurre en estatutos relacionados con otras materias, (⁹) en estatutos sobre libertad bajo palabra no se autorice la revisión judicial de las actuaciones administrativas.

■ Una actuación nula de la Junta, concediendo la libertad bajo palabra, no surte efecto legal alguno, y en cualquier momento, bien en *hábeas corpus* si el confinado intentare hacer valer sus derechos bajo dicha actuación, o bien mediante solicitud—como en este caso—para que se expida orden de encarcelación si se le hubiere excarcelado en virtud de aquélla, puede dicha actuación ser impugnada judicialmente, sin que obste para ello la ausencia en el estatuto de disposiciones sobre revisión judicial. *White* v. *Parole Board*, 86 A.2d 422 (N.J. 1952); *Ditchick* v. *State Board of Parole*, 46 N.Y. Supp. 514; véase también *People* v. *New York State Parole Board*, 39 N.Y. Supp.2d 200. Cf. *Commonwealth* v. *Harradine*, 25 A.2d 576. Y aunque relacionadas con el ejercicio de la clemencia ejecutiva, véanse monografías en 65 A.L.R. 1471 y 30 A.L.R. 238.

■ En consecuencia, el tribunal sentenciador tenía jurisdicción para conocer de la moción de El Pueblo y para investigar, bajo sus alegaciones, si la Junta había actuado sin autoridad y en violación de la ley al conceder a Emanuelli la libertad bajo palabra—interrumpiendo así el cumplimiento de las sentencias a éste impuestas—y para, en caso afirma-

---

(⁹) Véanse, sin embargo, *Rivera* v. *Benítez, Rector*, 73 D.P.R. 377 y *Estep* v. *United States*, 327 U. S. 114, 146, 90 L. ed. 567, para casos en que se ha reconocido el derecho a la revisión judicial aun cuando el estatuto no la provee.

tivo, ordenar su encarcelación para que continuara su cumplimiento, artículo 329, Código de Enjuiciamiento Criminal, en el legítimo uso del poder inmanente de los tribunales para hacer cumplir sus sentencias.

## II

*Naturaleza Ex Post Facto de la Ley Estableciendo la Sentencia Indeterminada.*

El alcance de la prohibición constitucional sobre aprobación de leyes *ex post facto* dirigida al Congreso—Artículo I, Sección 9, Cláusula 2—y dirigida a los estados—Artículo I, Sección 10, Cláusula 1—de la Constitución de los Estados Unidos, y que con igual alcance figuraba en el párrafo 8 del artículo 2 de nuestra antigua Ley Orgánica—48 USCA, sección 733—y figura ahora en la Constitución del Estado Libre Asociado de Puerto Rico—Artículo II, Sección 12, 2do párrafo—fué establecido originalmente en el año 1798 por el Tribunal Supremo Nacional en el caso de *Calder* v. *Bull*, 3 Dall 386, 1 L. ed. 648, por voz del Juez Chase, al declarar éste que consideraba *ex post facto* las siguientes leyes, y leyes similares: "1ra: Toda ley que hace criminal, y castiga, un acto realizado antes de la aprobación de dicha ley, el cual era inocente al realizarse. 2da: Toda ley que agrava un delito o lo hace mayor de lo que era al ser cometido. 3ra: Toda ley que altera el castigo y que impone una pena mayor que la que fijaba la ley al delito cuando fué cometido. 4ta: Toda ley que altera las reglas de evidencia y que exige menos prueba, o prueba distinta, a la exigida por la ley al momento de la comisión del delito, para castigar al acusado. . . . Pero yo no considero *ex post facto*, dentro de la prohibición, ninguna ley que mitigue el rigor de la ley penal, sino aquéllas que crean o agravan el delito, o aumentan la pena, o cambian las reglas de evidencia para los fines de la convicción." *Fernández* v. *Rivera, Jefe del Presidio*, 70 D.P.R. 900.

El anterior concepto sobre la aludida prohibición constitucional fué por primera vez ampliado por el Juez Washington

en la siguiente instrucción a un jurado en el caso de *United States* v. *Hall*, 26 Fed. Cas. 84 (1809), confirmado en 6 *Cranch* 171, 3 L. ed. 189: "Una ley *ex post facto* es aquélla que, en su operación, hace criminal aquello que no lo era al momento en que el acto fué realizado, o que aumenta la pena, o que, en resumen, *en su relación con el delito o sus consecuencias, altera la situación de un acusado* en su perjuicio." Véase *Ex Post Facto Laws in the Supreme Court of the United States*, 15 Calif. L. Rev. 269 y 28 *Journal of Criminal Law and Criminology*, 915.

Este concepto fué en igual forma expuesto por el Tribunal Supremo Nacional en *Kring* v. *Missouri*, 107 U.S. 221, 27 L. ed. 506; *Ex parte Medley*, 134 U.S. 160, 33 L. ed. 835 y *Thompson* v. *Utah*, 170 U.S. 343, 42 L. ed. 1061, y reafirmado luego en *Lindsey* v. *Washington*, 301 U.S. 397, 81 L. ed. 1182, habiéndose declarado en este último caso que "la cláusula *ex post facto* se dirige hacia la norma del castigo prescrito por la ley, más bien que a la sentencia de hecho impuesta", y que "un aumento en la pena posible es *ex post facto*." [10]

Examinemos ahora, a la luz de los anteriores principios, el problema de si la Ley 295 sobre Sentencias Indeterminadas, en su aplicación a Emanuelli, es *ex post facto*, ya que a la fecha de la comisión del delito los artículos 27 y 28 del Código Penal requerían del tribunal sentenciador que impusiera dentro de los límites prescritos para el delito de asesinato en segundo grado—de 10 a 30 años de presidio, artículo 202, Código Penal—una pena *determinada*, o fija, y no una indeterminada, que fué la que se le impuso.

Emanuelli sostuvo ante el tribunal a quo que la Ley 295 era *ex post facto* por cuanto le afectaba desventajosamente, ya que bajo la sentencia indeterminada de 12 a 24 años que le fué impuesta, tenía que transcurrir un término más

---

[10] Véanse *Malloy* v. *South Carolina*, 237 U.S. 180, 59 L. ed. 905; *Cummings* v. *Missouri*, 4 Wall 277, 326, 18 L. ed. 356; *Calder* v. *Bull*, 3 Dall 385, 1 L. ed. 648; 1 Alexander, *The Law of Arrest*, sec. 15, pág. 143.

largo([11]) para ser elegible a la libertad bajo palabra. A este respecto El Pueblo sostiene por su parte que siendo la libertad bajo palabra una gracia o privilegio, y no un derecho de naturaleza substantiva, y no constituyendo tampoco asunto de naturaleza penal, que es con relación a lo único que se aplica la cláusula sobre ley *ex post facto*, no es materia al alcance de dicha cláusula, agregando que ésta tampoco puede ser invocada aquí ya que no se trata de una persona *acusada* y sí de una sirviendo una sentencia

No tenemos que llegar a considerar la naturaleza de la Ley 295 desde el punto de vista discutido por las partes, o sea, de si es o no *ex post facto* porque afecta perjudicialmente a Emanuelli al hacerle más onerosa su situación *para obtener la libertad bajo palabra.* Hay una circunstancia anterior y superior que la hace *ex post facto;* que altera la norma del castigo en sí desfavorablemente para los acusados. *Lindsay* v. *Washington*, supra. La regla es que una ley que cambia el castigo después de la comisión del delito es *ex post facto si requiere cualquier pena* que *pueda ser* más severa *que la pena mínima* que podía ser impuesta bajo la ley anterior, o si permite una pena más severa que la máxima autorizada por la anterior ley. *Flaherty* v. *Thomas*, 12 Allen (Mass.) 428; *In re Lambrecht*, 137 Mich. 450, 100 N.W. 606; Rottschaefer *on Constitutional Law*, págs. 767, 772.

La Ley 295, según regía a la fecha de dictarse sentencia— al igual que en la actualidad, luego de la enmienda introducida por la Ley 176 de 4 de mayo de 1949—requería que los tribunales fijaran una sentencia indeterminada, sin término específico de duración, "por un término que no podrá ser en

---

([11]) A la fecha de la comisión del delito por el cual Emanuelli fué convicto—23 de noviembre de 1945—para que la entonces Junta Consultiva de Indultos y Libertad Bajo Palabra pudiera recomendar la libertad bajo palabra era requisito que el convicto hubiera servido la cuarta parte de la sentencia impuéstale. Ley núm. 180, aprobada el 15 de marzo de 1943 (pág. 653). La Ley 295 sobre Sentencias Indeterminadas requiere que el convicto cumpla "el término mínimo fijado por el tribunal sentenciador" antes de que pueda la Junta de Libertad Bajo Palabra asumir jurisdicción sobre él y concederle la libertad condicional.

ningún caso menor que el término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señala para dicho delito", y que en aquellos casos en que la ley no estableciera tales términos, los fijara el tribunal. Para demostrar que un castigo más oneroso puede imponerse bajo la Ley 295 que el que podía imponerse antes de su aprobación, bastará indicar que, antes, Emanuelli podía ser sentenciado a una pena fija de 10 años, que en ese caso hubiera sido tanto mínima como *máxima*. Bajo la Ley 295 esa pena de 10 años, sería únicamente *mínima*, viniendo obligado el tribunal a imponer siempre una pena máxima, la cual sería siempre mayor que la pena fija de 10 años que pudo habérsele impuesto. Bajo la Ley 295, por lo tanto, se requiere la imposición de una pena que resulta *siempre* más alta que la mínima que podía imponerse antes de su aprobación, que por su condición de pena fija resultaba también máxima. Evidentemente que en esa situación la norma de castigo ha sido alterada en detrimento del acusado. Cualquier pena que se cumpliera en su totalidad, bajo el ejemplo indicado, requeriría mayor tiempo en prisión que el que tendría que extinguirse bajo la sentencia mínima que podía imponerse antes de la aprobación de la Ley 295. Y ello es suficiente para vulnerar la cláusula *ex post facto*. *Lindsay* v. *Washington*, supra.

Pero hay más. Antes de la aprobación de la Ley 295 una persona sentenciada a un término fijo de 10 años de presidio, si observaba buena conducta dejaba totalmente extinguida su sentencia una vez cumplidos 6 años 8 meses en prisión. Hoy día, cumplido ese término sólo vendría a ser elegible para la libertad bajo palabra, ya que si el mínimo se fija en 10 años el máximo necesariamente es mayor por bajo que sea, y aún si se le concediera la libertad bajo palabra ese mismo día, el someterla después de ese término a las condiciones que conlleva tal libertad, afectaría adversamente su situación, pues además de las restricciones técnicas sobre su libertad en sí, *Application of Nasti*, 9 N.Y. Supp.2d 327 (1939), existiría siempre el peligro de una revocación y por consiguiente de una

re-encarcelación.    Bajo las normas establecidas en *Lindsay* v. *Washington*, resolvemos que la Ley 295 estableciendo las. Sentencias Indeterminadas es *ex post facto* si se aplica a personas convictas de delitos ocurridos con anterioridad a la fecha de su vigencia.    Véanse también *Ex parte Lee*, 171 Pac. 958 (Cal. 1918) ; *Ex parte Fritz*, 177 Pac. 157 (Cal. 1918) ; *Ex parte McCready*, 177 Pac. 459 (Cal. 1918) ; 2 Sutherland, *Statutory Construction*, secs. 2309, 2310, págs. 171 *et seq.* El pronunciamiento en contrario del caso de *Vázquez* v. *Rivera*, 70 D.P.R. 218, queda revocado.

La sentencia indeterminada de 12 a 24 años de presidio impuesta a Emanuelli, siendo consecuencia de una ley *ex post facto*, es, por lo tanto, nula.    *Vázquez* v. *Rivera*, supra.    El tribunal recurrido llegó, en cuanto a ese extremo, a la conclusión correcta, aunque por motivos que aquí no hemos entrado a considerar.    Sin embargo, una vez hubo llegado a la conclusión de que la Ley 295 es *ex post facto* en su aplicación a Emanuelli, no tenía base dicho tribunal para dictar orden alguna de encarcelación para que dicho acusado continuara el cumplimiento de la sentencia de 12 a 24 años que se le había impuesto y que, como ya hemos visto—y conforme resolvió dicho tribunal—era nula.    La teoría de que una sentencia indeterminada es una por el término máximo de la pena impuesta, *People ex rel Neville* v. *Ragen*, 72 N.E.2d 175; *Ex parte Lee*, supra, no da validez a una sentencia indeterminada nula.    En consecuencia, correspondía que el tribunal recurrido hubiera procedido a dictar una sentencia de término fijo—aquélla que debió haber sido impuesta originalmente.    *In re McCready*, supra; *People* v. *Scott*, 39 Cal. App. 128, 178 Pac. 298.    No habiéndolo hecho, el caso será devuelto a dicho tribunal para tales fines.

### III

*Vigencia de la Ley núm. 180 de 15 de mayo de 1943.*

█ Emanuelli sostiene que siendo la Ley 295 *ex post facto*, por lo cual no venía obligada la Junta de Libertad Bajo

Palabra a esperar que cumpliera el término mínimo de 12 años de la sentencia a él impuesta, tampoco estaba la Junta obligada, por disposición alguna de ley, a esperar que cumpliera la cuarta parte del término máximo de 24 años, antes de poder asumir jurisdicción en su caso y concederle la libertad condicional. Se funda en el hecho de que la Ley 266 de 4 de abril de 1946, creadora de la Junta de Libertad Bajo Palabra, derogó expresamente, por su sección 20, tanto las secciones 5, 6 y 7 de la "Ley Fijando Rebajas en las Sentencias en las Instituciones Penales de Puerto Rico, y Estableciendo un Sistema de Libertad Bajo Palabra," aprobada el 14 de marzo de 1907 (pág. 297), como la Ley núm. 29 de 13 de abril de 1940 (pág. 347) que adicionó las secciones 6a, 6b y 6c a la primera. Por éstas se creaba la Junta Consultiva de Indultos y Libertad Bajo Palabra y se fijaban sus funciones, estableciéndose por la sección 6c el requisito del cumplimiento de la cuarta parte de la sentencia por parte de un confinado para que dicha Junta pudiera recomendar su libertad condicional al Gobernador. La Ley 266, sin embargo, no derogó expresamente, por su sección 20, la Ley núm. 180 de 15 de mayo de 1943 (pág. 653), que además de enmendar la sección 1 de la Ley de 1907, enmendó también la sección 6c que había sido adicionada a dicha ley por la núm. 29 de 13 de abril de 1940.

La Junta de Libertad Bajo Palabra, en su resolución de 1ro de marzo de 1951 desestimando la reconsideración que le solicitara el entonces Procurador General el 4 de enero del mismo año, resolvió que la Ley 180 "quedó derogada por ser enmendatoria de una ley derogada, la núm. 29 de [13 de abril] de 1940," y que, en tal virtud, "La única limitación a la facultad amplia concedida por dicha ley [la núm. 266, de su creación] a la actual Junta de Libertad Bajo Palabra es la contenida en la Ley núm. 295 de 1946 estableciendo la Sentencia Indeterminada." Como consecuencia de ese punto de vista, la Junta consignó a renglón seguido en su resolución:

"A base de estas disposiciones la actual población penal se divide en dos grandes grupos:

"*a*. Aquellos reclusos que extinguen una sentencia indeterminada, en cuyos casos la Junta no adquiere jurisdicción hasta tanto se cumple el mínimo de dichas sentencias; y

"*b*. Aquellos reclusos que por haber sido convictos y sentenciados antes de la vigencia de la Ley de Sentencias Indeterminadas no quedan afectados, como los del primer grupo, por término específico alguno, pues en éstos se aplican las disposiciones de la Ley núm. 266."

Las disposiciones de la Ley 266 a que se refiere la Junta son aquéllas contenidas en la sección 6 que le autorizan a "decretar la libertad bajo palabra de cualquier persona confinada en cualquiera de las instituciones penales de Puerto Rico, de acuerdo con las disposiciones de esta ley" sólo "cuando las circunstancias presentes le permitan a la Junta creer con razonable certeza que tal medida habrá de lograr la rehabilitación moral y económica del delincuente" y que proveen que "Ningún confinado podrá ser puesto en libertad bajo palabra si no hubiere estado recluído aquel período de tiempo necesario para que, a juicio de la Junta, se hubiere iniciado en él el cambio moral favorable indispensable para lograr su rehabilitación moral completa mediante su excarcelación condicional bajo la supervisión constructiva de la Junta." Su posición es, con relación a aquellos reclusos sentenciados válidamente bajo la Ley de Sentencias Indeterminadas, que la Junta no puede asumir jurisdicción sobre ellos ni concederles la libertad bajo palabra hasta que no hayan extinguido el término mínimo de la sentencia indeterminada impuéstale; pero que con relación a aquellos sentenciados a términos fijos de prisión por no ser aplicable la Ley 295, entonces la Junta puede asumir jurisdicción sobre ellos y concederles la libertad bajo palabra sin que se exija para ello el cumplimiento de la cuarta parte de su sentencia, ni de ningún otro término específico, ya que no hay ley vigente que así lo establezca. Veamos.

Al no ser derogada expresamente la Ley 180 de 15 de mayo de 1943—como lo fué la 29 de 13 de abril de 1940—por la 266, la única posibilidad para sostener el punto de vista de la Junta es que haya sido derogada implícitamente. Para

determinarlo, el problema gira alrededor de la intención legislativa al aprobar la Ley 266. *United States* v. *Borden Co.*, 308 U.S. 188, 84 L. ed. 181, ya que los tribunales no han de atribuir a la intención legislativa consecuencias absurdas, 1 Sutherland, *Statutory Construction*, sec. 2007, pág. 454, *et seq.* La consignación en la cláusula 20 sobre derogación expresa de la ley de 1907 y de la núm. 29 de 1940, es indicio de que la intención legislativa no fué derogar la núm. 180, cuya existencia conocía, *Fay* v. *District Court of Appeal*, 200 Cal. 522, 254 Pac. 896, sobre todo en vista de que la Ley 266, *ex vi termini*, no cubre los casos en los cuales a la fecha de la aprobación de dicha ley, los acusados no habían cumplido aún la cuarta parte de la pena fija impuéstale, o no habían sido (como Emanuelli) aún sentenciados, y con excepción de la Ley 180, no derogada expresamente, ninguna otra ley podía proporcionar un medio adecuado y germano al propósito de la Ley 266 para hacer posible el funcionamiento armónico de la misma.

Contrario a lo resuelto por la Junta, no creemos que la Ley 180 "quedó derogada por ser enmendatoria de una ley derogada." Sus disposiciones respecto al cumplimiento de la cuarta parte de la sentencia podían subsistir no obstante ser derogada la Ley 29 de 1940. Y en verdad que tales disposiciones son esenciales para crear un sistema integrado de libertad bajo palabra que no adoleciera de defectos, pues no sería lógico pensar que la Asamblea Legislativa al reglamentar la materia, estableciera caprichosamente dos grupos de confinados, restringiendo a la Junta, por efecto de la Ley 295, en el uso de su facultad para conceder la libertad a aquellos a quienes dicha ley es aplicable, y dejándola sin limitaciones en el uso de esa facultad—en lo concerniente a término mínimo de cumplimiento de sentencia—para concederla libremente a aquellos a quienes sus disposiciones no son aplicables.

La sección 9 de la Ley 266 provee: "las disposiciones de esta Ley serán aplicables a las personas que a la fecha de su vigencia, *estuvieren en libertad condicional o bajo palabra, o*

*que fueren elegibles para ser puestas* en libertad condicional o bajo palabra de acuerdo con legislación vigente, con igual fuerza y vigor que si esta Ley hubiera estado vigente cuando dichas personas *fueron puestas* en libertad condicional o bajo palabra, o *fueron elegibles* para ello, según sea el caso." De una simple lectura de la anterior disposición parecería, a primera vista, que ella cubre sólo personas que *a la fecha de vigencia* de la propia ley, *estaban* ya disfrutando de la libertad condicional o bajo palabra, o que en esa fecha *ya habían cumplido* la cuarta parte de su sentencia de término fijo, con lo cual se hacían elegibles si reunían los demás requisitos exigidos por la ley en vigor cuando comenzó a regir la 266. Bajo tal interpretación, Emanuelli estaría excluído de las disposiciones de dicha ley, primero, porque él no está sujeto, válidamente, a pena indeterminada alguna, y segundo, porque no estaba en libertad condicional o bajo palabra ni había sido elegible para ello a la fecha de la vigencia de dicho estatuto. Esta conclusión no sería, sin embargo, razonable, ni daría vida real al propósito legislativo de integrar un sistema eficiente, científico y apropiado para contribuir así a la reforma y rehabilitación del delincuente. No podría pensarse nunca, de un lado, que Emanuelli estuviera excluído de las disposiciones de la ley—en cuanto a ser elegible a la libertad bajo palabra—y, de otro, que no tuviera que cumplir una cuarta parte de su sentencia antes de ser puesto en libertad bajo palabra. Ambos extremos derrotarían el propósito legislativo de una integración adecuada, bajo normas razonables, del sistema de libertad bajo palabra, pues uno de ellos dejaría a un grupo de delincuentes sin el amparo ni el estímulo que les haría posible regresar a la sociedad como hombres útiles, y el otro crearía un sistema de privilegio injustificado, contrario a la norma legislativa contenida en la Ley 295, extremos ambos que podrían hacer odioso lo que en su funcionamiento y aplicación es eficaz y sabio sistema para la reforma del delincuente.

Como la Ley núm. 180 de 15 de mayo de 1943 no fué de-

rogada expresamente y no sólo puede subsistir independientemente de la de 1907 y la núm. 29 de 1940 en sus disposiciones sobre el cumplimiento de la cuarta parte de la sentencia fija impuesta a un convicto de delito cometido con anterioridad a la vigencia de la Ley 295—si se lee juntamente a la Ley 266—si que en efecto llena un vacío y complementa esta última, en lo que concierne a cierto grupo de delincuentes, ni ha sido, por lo ya dicho, derogada implícitamente, resolvió correctamente el tribunal recurrido que para ser elegible a la libertad bajo palabra, una persona convicta a término fijo de prisión por delito cometido antes de la vigencia de la Ley 295 tiene que haber cumplido la cuarta parte de la pena impuéstale. Tal conclusión, sin embargo, aunque correcta, no es válida en este caso ya que la sentencia impuesta a Emanuelli no fué una de término fijo. Como ya hemos expresado anteriormente, la sentencia a él impuesta es nula.

En consecuencia, no habiendo el tribunal recurrido cometido los errores imputados por Emanuelli en su recurso de certiorari, ni por el Pueblo de Puerto Rico en el suyo, *deben anularse los autos expedidos; pero siendo nula, por ex post facto, la sentencia indeterminada de 12 a 24 años de presidio impuesta a Emanuelli por el delito de que fué convicto, se devolverá el caso al tribunal de su origen para que por éste se proceda a dictar la sentencia que en derecho corresponda, con cualquier otro pronunciamiento pertinente.*