ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EDSEL TORRES GÓMEZ<br><br>Peticionario<br><br><br>V.<br><br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | KLRA202500332 | Revisión Judicial procedente de la Junta de Libertad Bajo Palabra<br><br>JLBP Núm.: 147375<br><br>Sobre:<br><br>Moción en Solicitud de Reconsideración (No ha Lugar) |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 6 de agosto de 2025.

Comparece Edsel Torres Gómez ("Sr. Torres Gómez" o "Recurrente") y solicita que revoquemos la *Resolución y Orden* emitida por la Junta de Libertad Bajo Palabra ("Junta" o "Recurrida") el 6 de mayo de 2025, mediante la cual declaró No Ha Lugar una *Moción de Reconsideración* presentada por el Recurrente.

Por los fundamentos que exponemos a continuación, se **confirma** la *Resolución y Orden* emitida por la Junta.

-I-

En el presente caso, el 29 de agosto de 2000, el Sr. Torres Gómez resultó convicto, luego de hacer una alegación de culpabilidad, por los delitos de Asesinato en Primer Grado, Secuestro Agravado, e infracciones a los artículos 5, 6 y 8 de la Ley Núm. 17 de 19 de enero de 1951, según enmendada, mejor conocida como la Ley de Armas de Puerto Rico, por hechos acaecidos el 13 de

Número Identificador:

SEN2025_____

marzo de 1994.[1] Fue sentenciado a cumplir noventa y nueve (99) años de prisión por cada asesinato en primer grado, sesenta (60) años por cada secuestro agravado, y sesenta y seis (66) años por las infracciones a la Ley de Armas de Puerto Rico.[2] El Sr. Torres Gómez cumple estas penas de manera concurrentes entre sí, para una sentencia consolidada de noventa y nueve (99) años, a extinguirse el 13 de noviembre de 2094. El Sr. Torres Gómez también fue sentenciado el 27 de octubre de 2000, en el Tribunal de Distrito Federal para el Distrito de Puerto Rico, a cumplir una sentencia de treinta (30) años de prisión, la cual es concurrente con las sentencias estatales.[3]

El 8 de mayo de 2001, el Departamento de Corrección y Rehabilitación emitió una *Hoja de Control de Liquidación de Sentencia*. Mediante ella, determinó que el mínimo de cumplimiento de sentencia del Sr. Torres Gómez para ser elegible a la consideración de la Junta era el 30 de mayo de 2023.[4] La Junta consideró por primera vez el caso del Recurrente el 30 de junio de 2023. El 11 de agosto de 2023, la Junta emitió una *Resolución*, notificada el 26 de septiembre de 2023, a través de la cual determinó que no concedería el privilegio de libertad bajo palabra al Sr. Torres Gómez por entender que no cualificaba para este.[5]

---

[1] Véase Apéndice del *Escrito de Revisión Administrativa*, a las págs. 68-73; Véase, también, Apéndice del *Escrito en Cumplimiento de Resolución*, a las págs. 99-153.
[2] Véase Apéndice del *Escrito en Cumplimiento de Resolución*, a las págs. 100, 108, 116, 124, 132, 139, y 147.
[3] Véase Apéndice del *Escrito de Revisión Administrativa*, a las págs. 28-43.
[4] Véase Apéndice del *Escrito en Cumplimiento de Resolución*, a la pág. 1.
[5] Véase Apéndice del *Escrito de Revisión Administrativa*, a las págs. 45-49.

Así las cosas, el 17 de enero de 2025, la Junta emitió una *Resolución*, la cual fue notificada el 5 de febrero de 2025, mediante la cual pospuso la reconsideración del caso. En dicha determinación, solicitó al Departamento de Corrección y Rehabilitación que proveyera, entre otros, una Certificación de Delito Excluyente conforme la Ley Núm. 85-2024, para el delito de secuestro agravado, que indicase cuándo será cumplida por el Recurrente la sentencia por los cargos del referido delito.[6] En cumplimiento con esta solicitud, la Junta recibió el 20 de marzo de 2025, una *Certificación* emitida por el Departamento de Corrección y Rehabilitación el 18 de noviembre de 2024. Certificó que el Sr. Torres Gómez fue sentenciado a sesenta (60) años por el delito de secuestro, tipificado en el artículo 137 del Código Penal de 1974, cuya sentencia está cumpliendo de manera concurrente y debe cumplirla en su totalidad el 13 de noviembre de 2029.[7]

Posteriormente, el 28 de marzo de 2025, la Junta emitió una *Resolución*, notificada a la parte Recurrente el 10 de abril de 2025, en la que determinó que no tenía jurisdicción para atender el caso del Sr. Torres Gómez en virtud de la Ley Núm. 85-2024.[8] Determinó que el Recurrente deberá ser referido a la Junta por el Departamento de Corrección y Rehabilitación cuando advenga elegible y deje cumplido el delito de secuestro

---

[6] Véase Apéndice del *Escrito de Revisión Administrativa*, a las págs. 53-54.

[7] La Certificación indica que el Recurrente extinguiría la pena de los delitos de secuestro para el 13 de noviembre de 2029. No obstante, entendemos que se trata de un error, pues de la propia Certificación se desprende que el Sr. Torres Gómez fue sentenciado a cumplir sesenta (60) años por la comisión de los delitos de secuestro. La Certificación debe señalar que la pena por los mencionados delitos se extingue en el año 2060; Véase Apéndice del *Escrito en Cumplimiento de Resolución*, a la pág. 99.

[8] Véase Apéndice del *Escrito de Revisión Administrativa*, a las págs. 56-58.

agravado, luego del 13 de noviembre de 2029.[9] El 29 de abril de 2025, el Sr. Torres Gómez presentó una *Moción de Reconsideración*, la cual fue declarada No Ha Lugar por la Junta el 6 de mayo de 2025, y notificada al Recurrente el 7 de mayo de 2025.[10]

Inconforme con dicha determinación, el Sr. Torres Gómez acude ante nos mediante recurso de *revisión judicial* y hace los siguientes señalamientos de error:

**ERRÓ EL FORO ADMINISTRATIVO AL APLICAR AL RECURRENTE LA CLÁUSULA DE EXCLUSIÓN DE JURISDICCIÓN DE LA JUNTA DE LIBERTAD BAJO PALABRA ESTABLECIDA EN LA SECCIÓN 3 DE LA LEY NÚM.85-2024 POR ESTAR SENTENCIADO POR EL DELITO DE SECUESTRO AGRAVADO Y NO ESTAR CUMPLIDA LA TOTALIDAD DE LA SENTENCIA IMPUESTA AL MOMENTO DE LA APROBACIÓN DE LA LEY NÚM. 85-2024, ESTO EN VIOLACIÓN A LA PROHIBICIÓN CONSTITUCIONAL CONTRA LEYES *EX POST FACTO* Y EL DEBIDO PROCESO DE LEY.**

**LA JLBP ERRÓ AL APLICAR LA CLÁUSULA DE EXCLUSIÓN A TORRES GÓMEZ, POR SER ELLO CONTRARIO A LA INTENCIÓN LEGISLATIVA DE LA LEY NÚM. 85-2024 YA QUE EL DELITO DE SECUESTRO AGRAVADO EN SU CASO NO INCIDE DE MANERA ALGUNA EN LA INTEGRIDAD NI DIGNIDAD DE LA MUJER NI ES LESIVO A LAS MISMAS.**

**LA JLBP ERRÓ AL APLICAR LA CLÁUSULA DE EXCLUSIÓN A TORRES GÓMEZ POR TRATARSE DE UN PREACUERDO ACOGIDO POR EL HONORABLE TRIBUNAL Y CUALQUIER ACTO EN DETRIMENTO DE ESTE NO IMPUTABLE A TORRES GÓMEZ — EN ESTE CASO POR LA JLBP — LUEGO DE LA ACEPTACIÓN DEL TRIBUNAL Y LA ALEGACIÓN DE CULPABILIDAD, AFECTA LOS DERECHOS CONSTITUCIONALES DEL RECURRENTE.**

La Junta presentó su *Escrito en Cumplimiento de Resolución* el 14 de julio de 2025. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos.

---

[9] Nuevamente, entendemos que la fecha de 13 de noviembre de 2029, indicada en la *Resolución* discutida, se trata de un error. Debe indicar que el Sr. Torres Gómez dejará cumplida la pena por los delitos de secuestro agravado para el año 2060; Véase Apéndice del *Escrito de Revisión Administrativa*, a las págs. 56-58.
[10] Véase Apéndice del *Escrito de Revisión Administrativa*, a las págs. 24-26.

-II-

**A. Deferencia administrativa**

Los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le han sido delegados por la Asamblea Legislativa.[11] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[12] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos

---

[11] *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[12] *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[13]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad.[14] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[15] La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[16] Nuestro máximo foro ha expresado que esta intervención "*debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley.*"[17] Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en

---

[13] *Íd.*; Véase, además, *Super Asphalt v. AFI y otro*, supra, a la pág. 819.
[14] *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, a la pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, a la pág. 127.
[15] *Íd.*
[16] *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217.
[17] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36.

su totalidad.[18] Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad.[19] No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra.[20] Ahora bien, nuestro más alto foro ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[21]

Finalmente, el Tribunal Supremo ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[22]

### B. Protección Constitucional contra leyes *ex post facto*

---

[18] *Íd.*; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra.
[19] Véase Sección 4.5 de la LPAUG, 3 LPRA § 9675; *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36; *Torres Rivera v. Policía de PR*, supra, a la pág. 627.
[20] *Íd.*
[21] *Torres Rivera v. Policía de PR*, supra, a las págs. 627-628; *OEG v. Martínez Giraud*, supra, a la pág. 90.
[22] *OEG v. Martínez Giraud*, supra, a la pág. 91.

La Constitución de Puerto Rico dispone que "[n]o se aprobarán leyes *ex post facto* […]". En el ámbito penal una ley *ex post facto* se refiere a la aplicación retroactiva de una ley que agrave para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión.[23]

La protección contra leyes *ex post facto* se activa cuando la aplicación retroactiva de una ley le es desfavorable al acusado o convicto, en comparación con la ley vigente al momento en que se cometió el delito.[24] Por lo tanto, "*la cláusula constitucional contra leyes ex post facto garantiza que los estatutos provean al ciudadano un aviso adecuado ("fair warning") de la conducta prohibida y las consecuencias penales que acarrea realizar dicha conducta*.[25]

Por su parte, nuestro más alto foro ha indicado las cuatro (4) categorías de estatutos que, de aplicarse retroactivamente, violarían la prohibición de leyes *ex post facto*, a saber: **(1) leyes que criminalizan y castigan un acto que al ser realizado no era delito; (2) leyes que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) leyes que alteran o extienden el castigo del delito al momento de ser cometido, o el modo de cumplir la sentencia fijada; y (4) leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito**

---

[23] E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Fórum, 1992, Vol. II, págs. 545-549.
[24] *González v. E.L.A.*, 167 DPR 400, 409 (2006).
[25] *Íd.*

**para castigar al acusado o reduciendo el quantum de evidencia necesario para encontrarlo culpable.**[26]

Por su parte, cabe señalar que la protección contra leyes *ex post facto* no alcanza a leyes de naturaleza civil.[27] Sin embargo, el Artículo 9 del Código Civil dispone lo siguiente: "*[e]l efecto retroactivo de una ley, no puede perjudicar los derechos adquiridos al amparo de una ley anterior.*"[28]

### C. Junta de Libertad Bajo Palabra

Por virtud de la Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974, según emendada, la Junta está autorizada a "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico […]" para que cumpla la última parte de su sentencia fuera de la institución.[29] **La libertad bajo palabra no es un derecho, sino un privilegio que se le concede a un confinado cuando sirva al mejor interés de la sociedad y propicie la rehabilitación moral y económica del individuo, *según la sana discreción de la Junta*.**[30]

Para ejercer adecuadamente su discreción, la Junta aprobó el reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232 de 18 de noviembre de 2020 (Reglamento 9232). Este reglamento establece las normas procesales y sustantivas que gobiernan las funciones adjudicativas de la Junta. Además, incorpora las disposiciones de los procedimientos adjudicativos

---

[26] *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019); *González v. E.L.A.,* supra, pág. 408. *Énfasis suplido.*
[27] *González v. E.L.A.,* supra, págs. 409-410.
[28] 31 LPRA § 5323.
[29] 4 LPRA § 1501; 4 LPRA § 1503.
[30] Quiles v. del Valle, 167 DPR 458, 475 (2006); *Lebrón Pérez v. Alcaide, Cárcel de Distrito, 91 DPR 567, 570-571 (1964); Emanuelli v. Tribl. de Distrito, 74 DPR 541, 549 (1953). Énfasis suplido.*

estatuidos por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.[31]

El Artículo X del reglamento 9232 establece los criterios que la Junta deberá considerar al evaluar la solicitud de libertad bajo palabra de un confinado. En particular, la Sección 10.1 detalla ciertos criterios de elegibilidad, entre los cuales se destaca la Sección 10.1(B)(12):

> La Junta **tendrá discreción** para considerar los mencionados criterios según considere conveniente **y cualquier otro** meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.[32]

**D. Ley Núm. 85-2022 y Ley Núm. 85-2024.**

La Ley Núm. 85 de 11 de octubre de 2022, en lo pertinente, enmendó el Artículo 308 del Código Penal de Puerto Rico y el Artículo 3 de la Ley de la Junta de Libertad Bajo Palabra. En esencia, el propósito de estas enmiendas fue "establecer una manera justa, retributiva, y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable".[33]

Así, el Artículo 3 de la Ley de la Junta de Libertad Bajo Palabra dispone que la Junta adquiere jurisdicción y puede decretar la libertad bajo palabra de aquellas personas recluidas en cualquier institución penal de Puerto Rico cuando hubiese

---

[31] Ley Núm. 38-2017, 3 LPRA §§ 9601 *et seq.*
[32] *Reglamento de la Junta de Libertad Bajo Palabra*, Reglamento Núm. 9232, 18 de noviembre de 2020, pág. 48. *Énfasis suplido.*
[33] *Véase* Exposición de Motivos de la Ley Núm. 85-2022.

cumplido la mitad de la sentencia impuesta.[34] A modo de excepción, si la persona fue convicta por asesinato en primer grado, la Junta adquirirá jurisdicción cuando la persona haya cumplido veinticinco (25) años de su sentencia, o cuando haya cumplido diez (10) años de sentencia si el convicto es un menor que fue juzgado como adulto.[35] Ahora, el Artículo 308 del Código Penal de puerto Rico lee como sigue:

> Artículo 308. Términos para cualificar para consideración de la Junta de Libertad bajo Palabra.
>
> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.
>
> En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.
>
> En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

---

[34] 4 LPRA § 1503.
[35] *Íd.*

> En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palbra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.[36]

El 28 de mayo de 2024, se aprobó la Ley Núm. 85 para enmendar, entre otros, el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, mejor conocida como la Ley de la Junta de Libertad Bajo Palabra. La referida enmienda estableció que:

> [l]a Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, **secuestro agravado** y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.
>
> La Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior.
>
> La Ley 85-2022 no surtirá efecto en el cálculo de la sentencia de las personas convictas por los delitos de agresión sexual en todas su modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, **secuestro agravado** y pornografía infantil, indistintamente de la fecha de la comisión

---

[36] Artículo 308 de la Ley Núm. 146 de 30 de julio de 2012, según enmendada (Código Penal de Puerto Rico).

del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

[…]

Las personas que al momento de la aprobación de esta Ley ya estén referidas bajo la consideración de la Junta de Libertad Bajo Palabra sin que haya una determinación final, no cualificarán para este privilegio, indistintamente de la etapa procesal en que se encuentre la referida solicitud.[37]

Esta Ley se aprobó con el propósito de reforzar la seguridad de las víctimas, particularmente las mujeres, en vista del incremento en los casos de maltrato, y aclarar que la Ley Núm. 85 de 11 de octubre de 2022 no tiene una aplicación retroactiva a las personas convictas por los delitos anteriormente enumerados y tampoco afecta el cálculo de sus sentencias.[38]

### E. Alegaciones Pre-Acordadas.

El Tribunal Supremo de Puerto Rico ha definido las alegaciones pre-acordadas como "una negociación entre el Ministerio Público y el abogado del imputado por medio de la cual el acusado se declara culpable a cambio de ciertos beneficios que el Estado le concede".[39] Igualmente, se ha reconocido la utilidad que representan para la resolución de los casos penales.[40] En vista de ello, nuestro más alto foro expresó en *Pueblo v. Santiago Agricourt* lo siguiente:

Cuando un acusado se declara culpable, el Estado queda relevado de celebrar un procedimiento criminal que puede ser extenso y costoso. Además, el sistema de alegaciones pre-acordadas descongestiona

---

[37] Ley Núm. 85-2024, sec. 3; *Véase,* también, 4 LPRA § 1503.
[38] *Véase* Exposición de Motivos de la Ley Núm. 85-2024.
[39] *Pueblo v. Santiago Agricourt*, 147 DPR 179, 194 (1998).
[40] *Pueblo v. Pérez Adorno,* 178 DPR 946, 956 (2010).

los cargados calendarios de nuestros tribunales y permite que los acusados sean enjuiciados dentro de los términos requeridos por el ordenamiento procesal.[41]

Es de vital importancia resaltar que se ha reconocido la validez constitucional de las alegaciones pre-acordadas.[42] El estado de derecho vigente dispone que, desde un punto de vista administrativo, la conveniencia de las alegaciones pre-acordadas no constituye una obligación para las partes.[43] Ni el Estado ni el acusado están obligados a comenzar conversaciones a esos efectos.[44] El Tribunal Supremo de Puerto Rico ha resuelto que las alegaciones pre-acordadas no son un contrato tradicional entre el acusado y el Estado, así como tampoco son "un precontrato de oferta u opción de alegación entre las partes donde alguna de ellas pueda exigir el cumplimiento específico en caso de incumplimiento".[45] Se trata más bien de "un acuerdo de voluntades sui géneris que depende para su consumación de la aprobación final del tribunal".[46]

El mecanismo de las alegaciones pre-acordadas se encuentra codificado en las Reglas de Procedimiento Criminal, particularmente en la Regla 72. El Tribunal Supremo ha resuelto que los tribunales tienen discreción para aceptar, rechazar, modificar o permitir el retiro de una alegación pre-acordada.[47] Ahora bien, dicha discreción no es absoluta. Antes de aprobar una

---

[41] *Pueblo v. Santiago Agricourt*, *supra*, a la pág. 194.
[42] *Pueblo v. Rivera Montalvo*, 205 DPR 352, 367 (2020); *Pueblo v. Pérez Adorno, supra*, a la pág. 956; *Pueblo v. Santiago Agricourt*, *supra*, a la pág. 195; *Pueblo v. Mojica Cruz*, 115 DPR 569, 579 (1984).
[43] *Pueblo v. Santiago Agricourt*, *supra*, a la pág. 195.
[44] *Íd.*
[45] *Íd.*, a la pág. 196.
[46] *Íd.*
[47] *Pueblo v. Rivera Montalvo, supra,* a la pág. 367.

alegación pre-acordada, el tribunal está obligado a evaluar ciertos criterios a tenor con la Regla 72 de Procedimiento Criminal. Estos criterios son: 1) que ha sido hecha con pleno conocimiento, conformidad y voluntariedad del imputado; 2) que es conveniente a una sana administración de justicia; y 3) que ha sido lograda conforme a derecho y a la ética.[48] Si estos requisitos no están presentes, el juez debe rechazarla.[49] Conforme a los criterios antes esbozados, el tribunal tiene el deber de asegurase de que la alegación de culpabilidad se realizó de manera inteligente y voluntaria.[50]

El requisito de voluntariedad y conocimiento se exige tanto para la alegación de culpabilidad como para las alegaciones pre-acordadas.[51] Añadimos, que "el debido proceso de ley exige que la renuncia a los derechos constitucionsales que amparan al acusado durante el proceso criminal sea voluntaria y con conocimiento".[52]

-III-

Ante las controversias presentadas en este recurso, a esta curia le corresponde dirimir: 1) si erró la Junta al aplicar la Ley Núm. 85-2024 al caso del Sr. Torres Gómez en violación a la prohibición constitucional contra leyes ex post facto y el debido proceso de ley; 2) si erró la Junta al aplicar la Ley Núm. 85-2024 al caso del Sr. Torres Gómez por ser contraria a la intención legislativa del referido estatuto; y 3) si erró la Junta al aplicar la Ley Núm.

---

[48] 34 LPRA Ap. II, R. 72.
[49] *Pueblo v. Rivera Montalvo, supra*, a las págs. 367-368.
[50] *Íd.*, a la pág. 368.
[51] *Íd.*
[52] *Íd.*, a la pág. 368.

85-2024 al caso del Sr. Torres Gómez por tratarse de un preacuerdo acogido por el Tribunal que, según el Recurrente, afecta sus derechos constitucionales. Atenderemos los señalamientos de error de manera conjunta por estar relacionados entre sí.

En su Recurso, el Sr. Torres Gómez argumenta que la aplicación de la Ley Núm. 85-2024 viola la prohibición constitucional contra leyes ex post facto y el debido proceso de ley porque al momento de la comisión de los delitos por el Recurrente, era elegible para ser considerado ante la Junta. Arguyó, además, que la Ley Núm. 85-2024 es más onerosa que la ley vigente al momento de los actos delictivos, por lo que su aplicación retroactiva es una manera más onerosa de extinguir la pena y activa la cláusula constitucional contra leyes ex post facto. Adujo igualmente, que la aplicación de la referida ley al presente caso contraviene la intención legislativa. Por último, el recurrente señaló que, como su sentencia es producto de un preacuerdo acogido por el Tribunal, la aplicación de la Ley Núm. 85-2024 afecta sus derechos constitucionales. No le asiste la razón. Veamos.

Conforme hemos discutido anteriormente, en la esfera penal una ley *ex post facto* se refiere a la aplicación retroactiva de una ley que agrave para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. Además, como indicáramos en el acápite II de esta Sentencia, el Tribunal Supremo de Puerto Rico ha señalado que hay cuatro (4) categorías de estatutos que, de aplicarse retroactivamente, violarían la

prohibición de leyes *ex post facto*, a saber: (1) leyes que criminalizan y castigan un acto que al ser realizado no era delito; (2) leyes que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) leyes que alteran o extienden el castigo del delito al momento de ser cometido, o el modo de cumplir la sentencia fijada; y (4) leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el quantum de evidencia necesario para encontrarlo culpable.

Asimismo, la libertad bajo palabra no es un derecho, sino un privilegio. Este se concede a un confinado cuando sirva al mejor interés de la sociedad y propicie la rehabilitación moral y económica del individuo. Es de vital importancia recordar que la libertad bajo palabra se concederá siempre **según la sana discreción de la Junta**. Por otro lado, la Ley Núm. 85-2024 enmendó, entre otros, el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, mejor conocida como la Ley de la Junta de Libertad Bajo Palabra.

La referida enmienda estableció que la Junta no tendría jurisdicción para atender casos de personas confinadas, en lo pertinente, por delitos de secuestro y secuestro agravado, independientemente de la fecha de la comisión del delito ni el Código Penal o la ley especial usada para dictar sentencia, incluyendo los Códigos de 1974, 2004, y 2012. El propósito de esta ley al momento de su aprobación era reforzar la seguridad de las mujeres, víctimas de casos de maltrato. Además,

la Ley en cuestión aclaró que la Ley Núm. 85 de 11 de octubre de 2022 no tiene una aplicación retroactiva a las personas convictas por los delitos enumerados en la enmienda y tampoco afecta el cálculo de sus sentencias.

Por otra parte, indicamos con anterioridad que las alegaciones pre-acordadas son "una negociación entre el Ministerio Público y el abogado del imputado por medio de la cual el acusado se declara culpable a cambio de ciertos beneficios que el Estado le concede".[53] Recordemos, además, que las alegaciones pre-acordadas no son un contrato tradicional entre el acusado y el Estado. Tampoco son "un precontrato de oferta u opción de alegación entre las partes donde alguna de ellas pueda exigir el cumplimiento específico en caso de incumplimiento".[54] Son, en esencia, "un acuerdo de voluntades sui géneris que depende para su consumación de la aprobación final del tribunal".[55]

Al examinar detenidamente el expediente ante nuestra consideración, notamos que no hubo violación alguna a la cláusula constitucional contra leyes ex post facto. Como señalado con anterioridad, la participación de un confinado en el programa de la Junta de Libertad Bajo Palabra se trata de un privilegio, no así un derecho. Queda a la discreción de la Junta determinar si el confinado puede participar de este. Además, este caso no trata de una ley que criminaliza y castiga un acto que al ser realizado no era delito. Tampoco se trata de una ley que agrave el delito, y no lo hace mayor de lo que era al momento de

---

[53] *Pueblo v. Santiago Agricourt*, 147 DPR 179, 194 (1998).
[54] *Íd.*, a la pág. 196.
[55] *Íd.*

ser cometido por el Sr. Torres Gómez. La ley en cuestión no es una que altere o extienda la pena del delito de secuestro agravado al momento de ser cometido, o el modo de cumplir la sentencia fijada. Por último, no se trata de una ley que altere las reglas de evidencia y que exija menos prueba que la requerida por ley al momento de la comisión del delito de secuestro agravado para castigar al acusado, ni reduce el quantum de evidencia necesario para encontrarlo culpable.

Igualmente concluimos que la aplicación de la Ley Núm. 85-2024 al presente caso no contraviene la intención legislativa, como tampoco afecta sus derechos constitucionales al tratarse de una sentencia producto de un preacuerdo. Si bien es cierto que según la exposición de motivos de la Ley Núm. 85-2024, la enmienda se debió al incremento en los casos de maltrato a la mujer, no deja de ser menos cierto que la Sección 3 del precitado estatuto claramente excluye de la participación del privilegio de libertad bajo palabra a aquellas personas que estén convictas por diversos delitos, entre ellos, el de secuestro y secuestro agravado. Esto independientemente de la fecha en la que se haya cometido el delito y del Código Penal utilizado para dictar la sentencia, incluyendo, en lo pertinente, el Código Penal de 1974.

Con respecto al argumento de que, como su sentencia es producto de un preacuerdo acogido por el Tribunal, la aplicación de la Ley Núm. 85-2024 afecta los derechos constitucionales del Recurrente, recalcamos que la participación de un confinado en el programa de libertad bajo palabra es un privilegio y no

un derecho. La determinación de la Junta sobre su falta de jurisdicción para atender el caso del Recurrente no incide sobre los derechos constitucionales de este.

A la luz de lo antes esbozado, concluimos que la determinación de la Junta fue realizada conforme a derecho, por lo que no amerita la intervención de esta Curia.

-IV-

Conforme a los fundamentos antes expuestos, se **confirma** la *Resolución y Orden* emitida por la Junta.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones